MCG1GRE1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                              17 Cr. 630 (ER)

5  KARL SEBASTIAN GREENWOOD,

6              Defendant.                  Plea
   ------------------------------x

7
                                          New York, N.Y.
8                                         December 16, 2022
                                          11:19 a.m.
9

10  Before:

11                    HON. EDGARDO RAMOS,

12                                         District Judge

13
                        APPEARANCES
14
   DAMIAN WILLIAMS
15      United States Attorney for the
        Southern District of New York
16  BY:  SAGAR K. RAVI, ESQ.
         NICHOLAS FOLLY, ESQ.
17       Assistant United States Attorneys
         JULIETA V. LOZANO, ESQ.
18       Special Assistant United States Attorney

19  WEDDLE LAW PLLC
        Attorneys for Defendant
20  BY:  JUSTIN S. WEDDLE, ESQ.

21  LAW OFFICE OF HOWARD R. LEADER
        Attorneys for Defendant
22  BY:  HOWARD R. LEADER, ESQ.

23

24

25

MCG1GRE1

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4          MR. RAVI:  Good morning, your Honor.  Sagar Ravi for

5    the United States, and I'm joined at counsel table by Julieta

6    Lozno, Special Assistant United States attorney.

7          MR. WEDDLE:  Good morning, your Honor.  Justin Weddle

8    for Mr. Greenwood, who is sitting to my right, and co-counsel

9    Howard Leader is sitting further to my right.

10          MS. LOZANO:  Good morning, your Honor.

11          THE COURT:  Good morning to you all.

12          Mr. Ravi, what are we doing today?

13          MR. RAVI:  Your Honor, we have a superseding

14    information that we'd like to put on file and that the

15    defendant will be waiving and ultimately pleading guilty to.

16          THE COURT:  Very well.

17          Before we get started, I note for the record that it

18    is now approximately 20 minutes after the hour for a matter

19    that was scheduled for 11:00.  I hope that I don't need to say

20    again that I start on time.

21          Mr. Greenwood.  Actually, Mr. Weddle, will you confirm

22    that that is what we are here to do today?

23          MR. WEDDLE:  Yes, your Honor.  That is the defendant's

24    intent is to waive indictment, have the superseding information

25    filed, and then plead guilty to that superseding information.

MCG1GRE1

There is no plea agreement, your Honor, but we have received a
*Pimentel* letter.

THE COURT:  I understand.

MR. RAVI:  Your Honor, may I just note, regarding the
timing, I just want to apologize.  AUSA Nicholas Folly was
going to handle this proceeding.  He actually had a verdict
arrive at a trial that he's been on all this week, and
therefore I came over.  He may also be stepping in at any point
in time.

THE COURT:  I'm happy to blame Mr. Folly.

MR. RAVI:  Thank you.

THE COURT:  Mr. Greenwood, your attorney has advised
me that you wish to enter a plea of guilty to a superseding
information.  I'm happy to take your plea.  However, before I
do that, I need to ask you a series of questions, and I'm
trying to make two large determinations.  The first
determination that I need to make is that you understand what
is going on here today and the consequences of pleading guilty;
and the second determination that I am trying to make is that
you are in fact guilty of the crimes to which you wish to plead
guilty.  In order to make those determinations, I need to ask
you a series of questions.  It's absolutely vital that you be
truthful, so I'm going to have you placed under oath, okay?

THE DEPUTY CLERK:  Please stand and raise your right
hand.

MCG1GRE1

1          (Defendant sworn)

2          THE COURT:  You may be seated.  And everyone can

3   remain seated throughout this proceeding, just as long as you

4   have the microphones close to you.  You don't need to stand.

5          Mr. Greenwood, you are now under oath, and do you

6   understand that if you answer any of my questions falsely, your

7   answers could be used against you in a prosecution for perjury

8   or for making a false statement?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now as I indicated, I'm going to you ask a

11   series of questions.  If I ask you a question and you don't

12   understand it, just let me know that and I'll rephrase it, or

13   if I ask you a question and you wish to speak with your

14   attorneys before you answer it, just let me know that and I'll

15   accommodate you, okay?

16          THE DEFENDANT:  Okay.

17          THE COURT:  So we're going to start with some

18   background questions.

19          Sir, what is your full name?

20          THE DEFENDANT:  I am Karl Sebastian Greenwood.

21          THE COURT:  And how old are you, sir?

22          THE DEFENDANT:  I am 45 years of age.

23          THE COURT:  How far did you get in school?

24          THE DEFENDANT:  I went all the way to a bachelor with

25   honor's degree in the UK.

MCG1GRE1

1            THE COURT:  In the UK?

2            THE DEFENDANT:  Yes.

3            THE COURT:  So you're able to read and write in

4    English?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Are you now or have you recently been

7    under the care of a doctor or psychiatrist?

8            THE DEFENDANT:  I am seeing counsel but nothing

9    regarding mental health or anything.  It's a different issue.

10           THE COURT:  So when you say counsel, do you mean a

11   mental health practitioner?

12           THE DEFENDANT:  No.

13           THE COURT:  A counselor at the facility where you are

14   being held?

15           THE DEFENDANT:  No.  It's outside counsel, but it's --

16           MR. WEDDLE:  If I may, your Honor.  He's undergoing

17   some counseling, which we'd be happy to describe further for

18   your Honor, perhaps in a sealed proceeding.  It doesn't affect

19   his ability to understand the proceedings here today.  He also,

20   of course, has his lawyers, which I would refer to as outside

21   counsel, but I think he's referring to something different,

22   which is regular counseling sessions.

23           THE COURT:  Very well.  You may be seated, Mr. Weddle.

24           Are you under any medication as a result of that

25   counseling, Mr. Greenwood?

MCG1GRE1

1           THE DEFENDANT:  No, sir.

2           THE COURT:  Have you ever been treated or hospitalized

3    for any mental illness or any type of addiction, including drug

4    or alcohol addiction?

5           THE DEFENDANT:  No, sir.

6           THE COURT:  In the past 24 hours have you taken any

7    drugs, medicine, or pills or have you consumed any alcohol?

8           THE DEFENDANT:  No, sir.

9           THE COURT:  Is your mind clear today?

10          MR. WEDDLE:  Excuse me, your Honor.

11          (Mr. Weddle conferring with the defendant)

12          THE DEFENDANT:  I do take heart medication and also

13   for my asthma, but nothing to affect my mental health.

14          THE COURT:  Okay.  So you do take a variety of

15   different medications?

16          THE DEFENDANT:  Yes, yes.

17          THE COURT:  And do you take them on a daily basis?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do those medications affect your

20   ability to remember or to think?

21          THE DEFENDANT:  No.

22          THE COURT:  And have you taken those medications

23   within the last 24 hours?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  And are you feeling well enough to

MCG1GRE1

1    proceed and to understand what is going on here today?

2              THE DEFENDANT:  I do, sir.

3              THE COURT:  Now your attorney has advised me that you

4    wish to waive indictment and enter a plea of guilty; is that

5    correct?

6              THE DEFENDANT:  That's correct, your Honor.

7              THE COURT:  And Mr. Greenwood, have you had a full

8    opportunity to discuss your case with your attorneys, including

9    any possible defenses that you might have?

10             THE DEFENDANT:  Yes, I have.

11             THE COURT:  And have you had a full opportunity to

12   discuss with them the consequences of entering a plea of

13   guilty?

14             THE DEFENDANT:  Yes, I have.

15             THE COURT:  Are you satisfied with your attorneys and

16   their representation of you?

17             THE DEFENDANT:  I am, sir.

18             THE COURT:  Does either counsel have any doubt as to

19   Mr. Greenwood's competence to waive indictment and enter a

20   guilty plea at this time?

21             MR. FOLLY:  No, your Honor.

22             MR. WEDDLE:  No, your Honor.

23             THE COURT:  The record should reflect that Mr. Folly

24   has joined us.

25             Very well.  Based on my observations of the defendant,

MCG1GRE1

1  his responses to my questions and my observations of his

2  demeanor, I find that he is fully competent to waive indictment

3  and enter an informed guilty plea at this time.

4          So let us turn to the issue of waiver.

5          Mr. Greenwood, have you received a copy of the

6  superseding information in this matter?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Have you discussed it with your attorney?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  And, sir, do you understand that the

11  document that you've been provided is called a felony

12  information?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And do you understand that the information

15  was issued by the United States Attorney in this district,

16  Damian Williams?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And sir, because the charges against you

19  in that information are serious —— indeed, they are felony

20  offenses —— you have a constitutional right to require the

21  government to present evidence to a grand jury to see whether

22  the grand jury would vote to charge you with those crimes.  Do

23  you understand that?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  And do you understand that a grand jury is

MCG1GRE1

1   a group made up of at least 16 but not more than 23 citizens

2   and that at least 12 of them would have to agree that there was

3   probable cause to believe that the crimes were committed and

4   that you committed them before you could be indicted?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And if the grand jury voted to charge you,

7   the document they issued would be called an indictment, and it

8   would be signed both by the foreperson of the grand jury and

9   the United States Attorney.  Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And Mr. Greenwood, do you wish to give up

12   your right to have your case presented to the grand jury?

13          THE DEFENDANT:  I do, sir.

14          THE COURT:  Did you discuss that decision thoroughly

15   with your lawyers?

16          THE DEFENDANT:  Yes, I have, your Honor.

17          THE COURT:  I have been provided with a document known

18   as a waiver of indictment, and it has a series of signatures,

19   including one that purports to be yours, so I'm going to hold

20   that up.  Can you see that from where you're seated?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Is that your signature on this document?

23          THE DEFENDANT:  That is, your Honor.

24          THE COURT:  This document will be marked as Court

25   Exhibit No. 1.

MCG1GRE1

1            And when you signed this document, Mr. Greenwood, did

2    you sign it voluntarily?

3            THE DEFENDANT:  Yes, I did, sir.

4            THE COURT:  Before you signed it, did you discuss it

5    with your attorneys?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  And when you signed this document, did you

8    understand that you were acknowledging your willingness to give

9    up your right to be indicted by the grand jury?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Did anyone threaten you or force you to

12    give up that right?

13            THE DEFENDANT:  No, your Honor.

14            THE COURT:  Very well.  I find that Mr. Greenwood has

15    knowingly and voluntarily waived his right to be indicted by

16    the grand jury, and the information will be accepted for

17    filing.

18            Mr. Weddle, do you wish a public reading of the

19    information?

20            MR. WEDDLE:  No, your Honor.

21            THE COURT:  And sir, do you understand that you are

22    charged in that information with three crimes?  Count One

23    charges you with conspiracy to commit wire fraud; Count Two

24    charges you with wire fraud; and Count Three charges you with

25    conspiracy to commit money laundering.

MCG1GRE1

1          Mr. Folly, what are the elements of those offenses?

2          You can remain seated.

3          MR. FOLLY:  Thank you, your Honor.

4          As to the wire fraud conspiracy, those elements are as

5   follows:

6          For conspiracy, the elements are:

7          First, that the conspiracy charged in the information

8   existed —— that is, the existence of an agreement to commit the

9   unlawful object of the conspiracy charged in the information;

10  and

11         Second, that the defendant wilfully and knowingly

12  became a member of the conspiracy with intent to further its

13  illegal purpose —— that is, with the intent to commit the

14  object of the charged conspiracy.  Here, as to Count One, the

15  object is wire fraud, and the elements of wire fraud are as

16  follows:

17         First, the existence of a scheme to defraud or a

18  scheme to defraud others of money or property by false and

19  fraudulent representations or promises;

20         Second, knowing participation in the scheme to defraud

21  with knowledge of its fraudulent nature and with specific

22  intent to defraud; and

23         Third, the use of interstate or foreign wires.

24         Count Two charges substantive wire fraud.  I've just

25  provided the elements of substantive wire fraud, and those same

MCG1GRE1

1    elements apply to Count Two.

2            Count Three charges a money laundering conspiracy.  I

3    provided the elements to conspiracy, and those elements apply

4    to Count Three as well.  The objects of that conspiracy in

5    Count Three are as follows:

6            Domestic concealment money laundering.  And those

7    elements are:

8            First, that the defendant knowingly conducted a

9    financial transaction;

10           Second, that the defendant knew the property involved

11   in the financial transaction was proceeds of some form of

12   unlawful activity;

13           Third, that the financial transactions in fact

14   involved property constituting proceeds of specified unlawful

15   activity, which here is wire fraud; and

16           Fourth, that the defendant acted with knowledge that

17   the transaction was designed to conceal or disguise the nature,

18   location, source, ownership, or control of the proceeds.

19           The second object is international concealment money

20   laundering.  Those elements are as follows:

21           First, that the defendant transferred a monetary

22   instrument or funds from a place in the United States to or

23   through a place outside the United States, or to a place in the

24   United States from or through a place outside the United

25   States;

MCG1GRE1

Second, that the defendant did so with knowledge that the monetary instrument or funds involved represented the proceeds of some form of unlawful activity; and

Third, that the defendant did so with knowledge that the transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds' specified unlawful activity, which here, again, is wire fraud.

And finally, the third object of the money laundering conspiracy charged is international promotional money laundering, and those elements are:

First, that the defendant transported a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States; and

Second, that the defendant did so with the intent to promote the carrying on of the specified unlawful activity, which here is wire fraud.

THE COURT:  Thank you, Mr. Folly.

Mr. Greenwood, did you hear what the prosecutor said?

THE DEFENDANT:  Yes, I did, sir.

THE COURT:  And sir, do you understand that if you did not plead guilty to these three counts, the government would have to prove each and every element of those charges beyond a

MCG1GRE1

1  reasonable doubt at trial?

2          THE DEFENDANT:  Yes, I do, sir.

3          THE COURT:  And Mr. Greenwood, have you discussed with

4  your attorneys the possible punishment that you face if you

5  were to plead guilty to these three counts?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Sir, do you understand that with respect

8  to Count One, that that count carries a maximum term of

9  imprisonment of 20 years and a maximum term of supervised

10 release of three years?

11         THE DEFENDANT:  I do, sir.

12         THE COURT:  And that in addition, there are financial

13 penalties, including a mandatory special assessment that I must

14 impose of $100, and a fine that I could impose that can be the

15 greater of either $250,000 or twice the gross gain from the

16 offense or twice the gross loss to any victim of the offense.

17 Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  And with respect to Count Two, do you

20 understand that that count also carries a maximum term of

21 imprisonment of 20 years and a maximum term of supervised

22 release of three years?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And that count also carries financial

25 penalties, including a mandatory special assessment of $100

MCG1GRE1

that I must impose, and a fine that I could impose that in this

count is the greater of either $1 million or twice the gross

gain from the offense or twice the gross loss to any victim of

the offense.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And with respect to Count Three, again,

that count carries a maximum term of imprisonment of 20 years

and a maximum term of supervised release of three years.  Do

you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And again, the financial penalties of that

crime are a $100 special assessment that I must impose and a

fine that I could impose, which in this case is the greater of

either $500,000 or twice the value of the property involved in

the transaction.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you further understand that because

you are pleading guilty to several counts, Mr. Greenwood, I

have the ability to impose the sentences either concurrently,

meaning that they will all be served together, or

consecutively, meaning that you will be serving one sentence

after the others?  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you further understand that if I

sentence you consecutively, the maximum term of imprisonment

MCG1GRE1

1    that you are facing is 60 years?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Now I used the term "supervised release."

4    Do you understand that supervised release means that you will

5    be subject to monitoring and supervision when you are released

6    from prison?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  And that there are terms and conditions of

9    supervised release with which you must comply, and if you do

10   not comply with them, you could be returned to prison without a

11   jury trial?  Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  And sir, do you understand that if you do

14   violate the terms or conditions of supervised release and are

15   returned to prison, that new term could be for part or all of

16   the term of supervised release and that you will not receive

17   credit for time previously served in prison on your sentence or

18   for time previously served on a prior violation of supervised

19   release?  Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  And Mr. Greenwood, do you understand that

22   as part of your sentence, I can also order you to pay

23   restitution to any person injured as a result of your conduct?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And Mr. Greenwood, do you further

MCG1GRE1

1    understand that if I accept your guilty plea and find you

2    guilty, that determination may deprive you of certain valuable

3    civil rights, such as the right to vote, the right to hold

4    public office, the right to serve on a jury, the right to

5    possess any kind of firearm, and the right to hold certain

6    professional licenses?  Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Now the next series of questions that we

9    need to go over concern the rights that you are giving up by

10   pleading guilty, so again, please listen very carefully.

11           First, you have the right to be represented by an

12   attorney at trial and at every other stage of the proceedings.

13   If you could not afford an attorney, an attorney would be

14   appointed to represent you without cost to you.  Do you

15   understand?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  You have a right to a speedy and public

18   trial by a jury on the charges against you which are contained

19   in the information.  Do you understand?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  At any trial you would be presumed

22   innocent, and the government would be required to prove your

23   guilt by competent evidence beyond a reasonable doubt before

24   you could be found guilty.  You would not have to prove that

25   you were innocent at trial.  Do you understand?

MCG1GRE1

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  If there were a jury trial, the jury would

3     be composed of 12 people selected from this district, and all

4     12 would have to agree unanimously that you were guilty before

5     you could be found guilty.  Do you understand?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  At trial, you would have the right to see

8     and hear all of the witnesses against you, and your attorney

9     could cross-examine them.  Your attorney could object to the

10     government's evidence and offer evidence on your behalf.  You

11     would also have the right to have subpoenas issued to compel

12     witnesses to come to court to testify in your defense.  Do you

13     understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  At trial, you would have the right to

16     testify if you wanted to, but no one could force you to

17     testify, and if you chose not to testify, the jury would be

18     told that it could not hold that against you.  Do you

19     understand?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  If you were convicted at trial, you would

22     have the right to appeal that verdict.  Do you understand?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you also understand, sir, that by

25     entering a plea of guilty here today, you are giving up all of

MCG1GRE1

1    the rights that I have just described except for your right to

2    counsel, and you will be found guilty based just on your plea

3    of guilty?  Do you understand?

4                THE DEFENDANT:  Yes, your Honor.

5                THE COURT:  And Mr. Greenwood, do you also understand

6    that you can change your mind right now for any reason and

7    decide that you did not want to enter a plea of guilty?

8                THE DEFENDANT:  I do, your Honor.

9                THE COURT:  Okay.  Mr. Greenwood, are you a US

10   citizen?

11               THE DEFENDANT:  No, sir.

12               THE COURT:  Of what country are you a citizen?

13               THE DEFENDANT:  I'm dual nationality from United

14   Kingdom and Sweden.

15               THE COURT:  And what is your status in this country?

16               THE DEFENDANT:  I'm an inmate.  No status.

17               THE COURT:  Okay.  Mr. Weddle, have you advised

18   Mr. Greenwood about the possible immigration consequences of

19   entering a plea of guilty?

20               MR. WEDDLE:  We have, your Honor.  Just for the

21   Court's information, Mr. Greenwood was arrested in Thailand and

22   extradited here, so he's virtually never set foot in the United

23   States.  I think maybe one or two other occasions.  But he's

24   aware that the likely immigration consequences of this

25   conviction are that he will be removed from the United States.

MCG1GRE1

1          THE COURT:  Very well.

2          Mr. Greenwood, have your lawyers advised you as to the

3   possible immigration consequences of your plea?

4          THE DEFENDANT:  They have, your Honor.

5          THE COURT:  Sir, do you understand that there could be

6   adverse immigration consequences, including deportation, as a

7   result of your plea?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  So do you understand that if there are

10  adverse immigration consequences, you will not be able to

11  withdraw your plea or appeal or otherwise challenge your

12  conviction on the basis of those immigration consequences?

13         THE DEFENDANT:  I do.

14         (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

MCG1GRE1

1          THE COURT:  Do you further understand that, in all

2    likelihood, you will be deported from the United States after

3    you serve your sentence?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand that if for some reason

6    you are not deported after serving your sentence, if you are

7    held in the U.S. pending deportation, you will be subject to

8    supervised release?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And, sir, do you understand that if you

11   have begun the process of becoming a naturalized U.S. citizen,

12   the fact of your conviction could adversely affect that

13   process?

14         THE DEFENDANT:  I do, your Honor.

15         THE COURT:  Do you further understand the fact of your

16   conviction could adversely affect any application you may make

17   in the future to re-enter the United States?

18         THE DEFENDANT:  I do, your Honor.

19         THE COURT:  Do you understand if you are deported,

20   returning to the United States during the period of supervised

21   release, without the permission of the U. S. Department of

22   Homeland Security would not only be a separate crime but also a

23   violation of your conditions of supervised release and you

24   could be sent back to prison without a trial?  Do you

25   understand that?

MCG1GRE1

1            THE DEFENDANT:  I understand.

2            THE COURT:  Now, the next series of questions we need

3    to go over involve sentencing guidelines.  So let me begin by

4    asking you, do you understand there are sentencing guidelines

5    that I must consider in determining the appropriate sentence in

6    your case?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Have you spoken with your lawyers

9    regarding the applicable guidelines in your case?

10           THE DEFENDANT:  I have, your Honor.

11           THE COURT:  Do you understand that I have to calculate

12   the applicable guidelines range and consider that range in

13   determining what your sentence will be?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Mr. Greenwood, do you understand that I

16   will not be able to make that calculation until after a draft

17   presentence report has been completed by the probation

18   department and that both you and your lawyers have had a chance

19   to review that draft?

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Do you understand that after I receive the

23   final report and calculate the applicable guidelines range in

24   your case, I have the ability to impose a sentence that can be

25   higher or lower than what the guidelines recommend?

MCG1GRE1

1        Do you understand?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  Do you also understand that in addition to

4   determining the applicable guidelines range, I also have to

5   consider a number of other factors set forth in the law, what

6   is Title 18 of the United States Code Section 3553(a), which

7   requires me to consider, among other things, your history and

8   characteristics, and the nature of the offenses to which you

9   are pleading in determining the appropriate sentence in your

10  case?

11       THE DEFENDANT:  Yes, your Honor.

12       THE COURT:  So even after I calculate the applicable

13  guidelines range, I must also consider these other factors, and

14  again might settle on a sentence higher or lower than what the

15  guidelines recommend.

16       Do you understand that?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  Sir, do you understand that if your

19  attorney or anyone else has attempted to estimate or predict

20  what your sentence will be, their estimate or prediction could

21  be wrong?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  Mr. Greenwood, while it is perfectly

24  appropriate for you and your lawyers to have discussed how the

25  sentence will be calculated, no one can give you any assurance

MCG1GRE1

1   of what your sentence will be.

2               Do you understand that?

3               THE DEFENDANT:  I understand, your Honor.

4               THE COURT:  Mr. Greenwood, I say all of this to you

5   because you need to understand today that if your sentence is

6   different from what your attorney or anyone else has told you

7   it might be, or if it is different from what you expect, or

8   even if it is different from what is contained in the letter

9   that you receive from the government, you will still be bound

10  by your guilty plea, and you will not be allowed to withdraw

11  your guilty plea.

12              Do you understand that?

13              THE DEFENDANT:  I understand, your Honor.

14              THE COURT:  Mr. Greenwood, do you understand if you

15  are sentenced to prison, there is no parole in the federal

16  system, and you will not be released early on parole?

17              THE DEFENDANT:  I understand.

18              THE COURT:  Now, the next series of questions we need

19  to go over involve the letter you received from the government.

20  It's a letter dated December 8, 2022, and it is a letter that

21  was provided to you pursuant to the case *United States v.*

22  *Pimentel*, which is reported at 932 F.2d 1029, a Second Circuit

23  case from 1991.

24              So, sir, do you understand that this so-called

25  *Pimentel* letter from the government to your lawyers is just the

MCG1GRE1

government's best guess as of today as to how the sentencing

guidelines will operate in your case?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if, between now and

the time of your sentencing, the government realizes that it

made a mistake, or gets new information, it could take a

different position at your sentencing regarding the sentencing

range?

THE DEFENDANT:  I do, your Honor.

THE COURT:  So the letter is not a promise by the

government.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand that there is

nothing in this *Pimentel* letter that is binding on me; that I'm

still going to make my own determination as to what the

appropriate guidelines range is?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Folly, would the government please

summarize what it would expect to prove if this case were

expected to proceed to trial?

MR. FOLLY:  Yes, your Honor.

Were this case to proceed to trial, the government

would present evidence at trial, including witness testimony,

email evidence, phone evidence, audio recordings, photographs,

MCG1GRE1

1    promotional one point videos posted online, financial records,

2    and other documentary evidence showing the following:

3            In 2014, the defendant, Sebastian Greenwood, and

4    co-conspirator Ruja Ignatova cofounded OneCoin, a company based

5    in Sofia, Bulgaria that marketed a purported cryptocurrency

6    named by the same name, which was, in fact, a fraudulent

7    pyramid scheme.  The defendant and Ignatova conceived of and

8    built the OneCoin business fully intending to use it to defraud

9    investors.

10           The defendant was OneCoin's global master distributor

11   and the leader of the multi-level marketing -- also known as

12   MLM -- network through which the fraudulent cryptocurrency was

13   marketed and sold.  OneCoin records show that between the

14   fourth quarter of 2014 and the fourth quarter of 2016 alone,

15   OneCoin generated approximately four billion euros in sales

16   revenue and earned profits of approximately 2.7 billion euros.

17           The defendant, as well as Ignatova and others, made

18   material misrepresentations to induce victims to purchase

19   OneCoin cryptocurrency packages.  Among other things, they

20   falsely represented that the value of OneCoin was determined by

21   market supply and demand when, in fact, OneCoin's value was set

22   by the company itself with no regard for market supply and

23   demand; OneCoin maintained a private blockchain or a digital

24   ledger identifying OneCoins and reporting historical

25   transactions, when, in fact, OneCoin lacked a true blockchain,

MCG1GRE1

1    that is, a public and verifiable blockchain; and the OneCoin

2    cryptocurrency was "mined" using mining servers maintained and

3    operated by the company when, in fact, OneCoins were never

4    mined using computer resources.

5         The defendant and other OneCoin representatives

6    knowingly marketed OneCoin cryptocurrency packages to

7    individuals located in the United States.  Indeed, Ignatova

8    announced the official opening of the United States market for

9    OneCoin on July 4th, 2015.

10        As a result of the material misrepresentations by

11   Greenwood, Ignatova, and other OneCoin representatives, victims

12   all over the world invested in fraudulent OneCoin

13   cryptocurrency packages.  One or more victims residing in the

14   Southern District of New York invested in such OneCoin

15   packages, which investments involved the use of interstate and

16   foreign wires that passed through the Southern District of New

17   York.

18        The defendant, Ignatova, and others also engaged in

19   and caused countless financial transactions, some of which were

20   transmitted through corresponding bank accounts and other bank

21   accounts located in the Southern District of New York designed

22   to conceal the nature, location, source, ownership, and control

23   of OneCoin fraud proceeds and to promote the carrying on of the

24   OneCoin fraud scheme.  Among other things, approximately

25   $400 million of OneCoin fraud proceeds were laundered through

MCG1GRE1

1    the so-called Fenero Funds, which were a series of fraudulent

2    private equity investment funds operated by co-conspirator Mark

3    Scott, which utilized bank accounts in the Cayman Islands and

4    Ireland, among other locations, and involved certain

5    transactions processed through corresponding bank accounts held

6    at a bank located in the Southern District of New York.

7              THE COURT:  Thank you, Mr. Folly.

8              Mr. Greenwood, did you hear what the prosecutor said?

9              THE DEFENDANT:  Yes, I did, sir.

10             THE COURT:  Mr. Greenwood, have you clearly understood

11   everything that has happened here today so far?

12             THE DEFENDANT:  Yes, I have, your Honor.

13             THE COURT:  Mr. Greenwood, would you now please tell

14   me in your own words what it was that you did that you believe

15   makes you guilty of the three crimes to which you are pleading

16   guilty?

17             THE DEFENDANT:  Yes, sir.

18             MR. WEDDLE:  If I may, your Honor, counsel and Mr.

19   Greenwood have worked together on a written statement, and,

20   with the Court's permission, he'd like to read from that

21   statement.

22             THE COURT:  It's perfectly fine for you to read, Mr.

23   Greenwood.  I would only ask that you be conscious, because

24   sometimes when people read, they tend to read very quickly.

25             THE DEFENDANT:  Yes.

MCG1GRE1

1        THE COURT:  That you be very conscious that you read

2   as deliberately as you can so that every word can be taken down

3   accurately.

4        THE DEFENDANT:  Yes, your Honor.

5        Okay.  In approximately 2014, I met Ruja Ignatova and

6   assisted her in establishing the OneLife Network, a multi-level

7   marketing company.  In addition to buying a membership in the

8   network, network members could also sign up to be independent

9   marketing agents and sell network packages to others and

10  receive commissions on downstream sales.  The OneLife Network

11  ostensibly centered around selling financial education packages

12  which include free OneCoin tokens, and the tokens could be

13  converted into OneCoin, which was described as a

14  cryptocurrency.  In selling to the network and in seeking to

15  convince buyers to purchase large packages and to sell packages

16  aggressively to others, we deliberately invited comparisons to

17  Bitcoin, a cryptocurrency based on a distributed ledger or

18  blockchain.

19       Based on this comparison and other marketing

20  techniques, I knew and intended that people would buy into

21  OneCoin and related products based on the misconception that it

22  would be a profitable investment and based on the misconception

23  that OneCoin, like Bitcoin, was a cryptocurrency based on a

24  distributed blockchain and valued by supply and demand.  In

25  fact, I knew the company would set and manipulate the stated

MCG1GRE1

1  value of OneCoin.  I participated in this deception by making

2  misrepresentations to convince people that OneCoin would be the

3  next big thing, bigger than Bitcoin, when I knew that it had no

4  intrinsic value.

5       I also knew that in the second half of 2015, with my

6  participation, the company targeted the United States using

7  these same misrepresentations, including by sending these

8  misrepresentations by wire transmissions into the United

9  States.  I also knew that banks were reluctant to accept the

10 proceeds of sales of OneCoin.  I therefore agreed with others

11 to conceal the source of those proceeds when engaging in

12 financial transactions.  I understood that the same agreement

13 would apply to any of those proceeds coming from the United

14 States market.

15       At the time I participated in this conspiracy in the

16 United States, I knew what I was doing was wrong.

17       THE COURT:  Thank you, Mr. Greenwood.

18       When you did the things that you just described,

19 Mr. Greenwood, did anyone threaten you or force you to do those

20 things?

21       THE DEFENDANT:  No, your Honor.

22       THE COURT:  Does either counsel wish me to make any

23 further inquiries?

24       Mr. Folly?

25       MR. FOLLY:  No, your Honor.

MCG1GRE1

           With respect to the issue of venue, we would refer

back to the factual proffer we gave a few moments ago as to

what we would prove at trial.

           THE COURT:  Mr. Weddle, do you want me to make any

further inquiries?

           MR. WEDDLE:  No, your Honor.

           THE COURT:  Mr. Weddle, do you believe that there is

an adequate factual basis to support the plea?

           MR. WEDDLE:  Yes, your Honor.

           THE COURT:  Do you know of any reason why your client

should not be permitted to plead guilty?

           MR. WEDDLE:  No, your Honor.

           THE COURT:  Mr. Folly, is there an adequate factual

basis to support the plea of guilty?

           MR. FOLLY:  Yes, your Honor.

           THE COURT:  Mr. Greenwood, how do you now plead to the

charge in Count 1 of the information, guilty or not guilty?

           THE DEFENDANT:  Guilty, your Honor.

           THE COURT:  How do you plead to the charge in Count 2

of the information, guilty or not guilty?

           THE DEFENDANT:  Guilty, your Honor.

           THE COURT:  How do you plead to the charge in Count 3

of the information, guilty or not guilty?

           THE DEFENDANT:  Guilty, your Honor.

           THE COURT:  Are you, in fact, guilty of those charges,

MCG1GRE1

1      sir?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  Are you pleading guilty voluntarily and of

4      your own free will?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  Is there a forfeiture allegation in the

7      information?

8                    MR. FOLLY:  Yes, your Honor.  I believe there is.

9                    THE COURT:  Mr. Greenwood, do you admit to the

10     forfeiture allegation in the information?

11                   MR. WEDDLE:  Your Honor, if I may interrupt briefly?

12                   THE COURT:  Sure.

13                   MR. WEDDLE:  We have a proposal for how to essentially

14     organize the case between now and sentencing, and I've

15     discussed it with the prosecution.  And I think we're in

16     agreement in how to essentially tee up the issues for your

17     Honor's decision and to sort of get to sentencing in the most

18     efficient way.  I think that the forfeiture plays together with

19     those issues, and I'm happy to discuss them more right now or,

20     if your Honor would like to finish the plea proceeding and then

21     we could take that up, but I don't think it's necessary for

22     Mr. Greenwood right now at this moment to admit the forfeiture

23     allegations.

24                   THE COURT:  I think that's probably right.

25                   Any objection to that, Mr. Folly?

MCG1GRE1

1          MR. FOLLY:  No, your Honor.

2          THE COURT:  Very well.  Mr. Greenwood, because you

3    acknowledge that you are, in fact, guilty as charged in Counts

4    1 through 3 of the superseding information, because I find that

5    you know your rights and are waiving them knowingly and

6    voluntarily with an understanding of the consequences of the

7    plea, including the potential sentences that may be imposed, I

8    accept your guilty plea and find you guilty of those three

9    charges.

10          I will now direct that a presentence investigation be

11    conducted by the probation office, and that a presentence

12    report be prepared.  You will be interviewed by the probation

13    office as part of that process.  You can and should have your

14    lawyers with you when you are interviewed.  You will receive a

15    draft of the presentence report before I receive it, and when

16    you receive the draft, please review it very carefully with

17    your attorneys and bring to my attention any mistakes or

18    discrepancies that you may find therein.  The presentence

19    report is a very important part in my decision as to what the

20    sentence will be, but both you and your attorneys will have an

21    opportunity to speak on your behalf before I impose sentence.

22          If I could just impose on defense counsel to

23    coordinate with probation so the interview can take place

24    within -- I guess the next couple of weeks may be difficult

25    because of the holidays but within the next few weeks.

MCG1GRE1

1           MR. WEDDLE:  Yes, your Honor.

2           THE COURT:  Very well.  Do we have a date for

3    sentencing?

4           MR. WEDDLE:  Well, your Honor, if I may -- does your

5    Honor prefer that I sit?

6           THE COURT:  It's up to you.

7           MR. WEDDLE:  I'm a little bit more comfortable --

8           THE COURT:  As long as you're close to the microphone.

9           MR. WEDDLE:  It makes me feel weird to sit down.

10          THE COURT:  I understand.

11          MR. WEDDLE:  So as I mentioned, your Honor, we have a

12   proposal for how to organize the issues going forward, and just

13   to preview for your Honor, the major dispute that we have

14   between the parties has to do with a fundamental legal question

15   about how the guidelines should be applied.  And the

16   fundamental legal issue about how the guidelines should be

17   applied dovetails with some of the briefing and argument that

18   your Honor has heard in the Mark Scott case, because it has to

19   do with whether the guidelines should be applied to worldwide

20   conduct or whether the guidelines should be applied to U.S.

21   based conduct.  And we've shared with the government our

22   argument about this.  They disagree.  And the parties plan to

23   present the issue to your Honor for decision.

24          What we think makes the most sense is to set a

25   briefing schedule on this fundamental legal issue and submit

MCG1GRE1

1    briefs and hopefully get a decision from your Honor as step one

2    of the process.  Step two of the process is then to apply that

3    legal decision to the facts.  And it's hard to know right now,

4    without knowing the legal decision, how difficult or contested

5    step two may be, so if your Honor says that the guidelines

6    apply to global conduct, then the parties may need to have a

7    contested hearing or some kind of truncated version of a

8    hearing about what that means in terms of the evidence of

9    global conduct.  And, likewise, if your Honor decided that the

10   guidelines should apply to U.S. based conduct, we'd want to

11   have a discussion with the government about what is the

12   evidence that quantifies U.S. based conduct and do we need to

13   have a contested proceeding on that or some truncated version

14   of it or should we agree on it.  So that's step two.

15         And then step three is simply to proceed to sentencing

16   with all of the 3553(a) factors, and as your Honor I'm sure can

17   predict, there are very substantial 3553(a) arguments to be

18   made on behalf of Mr. Greenwood in this case after the

19   guidelines issues have been determined.

20         So what we had proposed was a briefing schedule

21   roughly as follows, which was that we would submit a brief to

22   your Honor arguing that the guidelines should be based on U.S.

23   based conduct, and, you know, we've shared some of the case law

24   with the government.  Particularly, there's a Second Circuit

25   case called *Azeem*, and a number of other cases that you've

MCG1GRE1

1    seen, and it's got briefing that we think supports this

2    argument.  And we would submit that brief January 20th.  The

3    government would submit an opposition brief or a responsive

4    brief on February 10th, and then we would reply February 22nd.

5        Hopefully, at the Court's convenience, sometime

6    shortly thereafter we could set a date for an oral argument to

7    answer any questions your Honor may have about the briefing.

8    And then hopefully we could get a decision on this abstract

9    legal issue from your Honor, and then we could come back either

10   after discussing it among the parties or something to propose

11   kind of a schedule going forward from there for step two and

12   step three.

13       We think that it -- and, again, I've discussed this

14   whole thing with the prosecution here, but we think it makes

15   sense to set a sentencing control date four months out.  In

16   addition, our client is eager to move this process to

17   conclusion.  So we welcome the opportunity to begin the

18   presentence investigation report and conduct the background

19   part of that.  We would prefer that probation be instructed or

20   invited not to opine on the guidelines issue that we are all

21   briefing to your Honor simultaneously, but what we hope is that

22   probation could do the bulk of their work on the PSR in

23   parallel to that process.  And then, getting a decision from

24   your Honor, they could come up with their opinion on the

25   guidelines application or recommendation.

MCG1GRE1

```
1          Obviously, you know, the parties could discuss or
2   agree how the legal decision applies to the facts to come up
3   with an actual guidelines calculation.  And I think after step
4   two, whatever it ends up being, your Honor could, in fact, make
5   a guidelines calculation, and then we could do papers on
6   3553(a) factors or those two things could be combined together.
7          But that's our proposal in terms of just organizing
8   issues going forward and making sure that these fundamental
9   legal disputes between the parties can get decided in the most
10  efficient way without slowing down the entire process.
11          THE COURT:  Mr. Folly, have you discussed the schedule
12  with Mr. Weddle and do you consent?
13          MR. FOLLY:  Your Honor, we have discussed that
14  schedule and the specific dates provided by Mr. Weddle, and we
15  don't have an objection to that.  We would request, if the
16  Court is amenable, to setting the oral argument date
17  approximately a week after the completion of the reply brief.
18          THE COURT:  That would be February 27?
19          MR. FOLLY:  Was that right?
20          MR. WEDDLE:  That would be one week later, yes.
21  That's a Wednesday, your Honor.
22          THE COURT:  Ms. Rivera, are we available?
23          MR. WEDDLE:  Wait.  I'm sorry.  I had that wrong.  We
24  had proposed a reply brief of the 22nd, so a week later would
25  be March 1st.
```

MCG1GRE1

1          THE COURT:  Okay.

2          MR. WEDDLE:  The 27th is three business days later.

3          THE DEPUTY CLERK:  Yes, you are available on March 1

4     at 2:00 p.m.

5          THE COURT:  Should we get a date for sentencing, at

6     least a control date, for early April?

7          THE DEPUTY CLERK:  April 5 at 2:00.

8          THE COURT:  Okay.  Now, I won't hold anyone to the

9     amounts which you may or may not want to provide now, but what

10    are we talking about in terms of the difference between U.S.

11    only conduct versus extraterritorial conduct?  Is it a

12    substantial percentage of the overall potential loss amount?

13         MR. WEDDLE:  It's a very small percentage, your Honor,

14    but it's still a substantial number depending on how convincing

15    you find some of the evidence to be.  You know, there was a

16    $57,000 figure that was in the Mark Scott briefing.  I don't

17    know -- you know, it's the government's burden to come up with

18    the proof here.  I would imagine that they may be able to

19    proffer evidence of more than those two U.S. victims and come

20    up with a number that's larger than the $57,000, but obviously

21    the global numbers are very large.  And, depending on how much

22    you believe the proffer, for example, from Mr. Folly today, you

23    know, the top of the guidelines loss table maxes out at 550

24    million.

25         So it's a substantial difference in terms of the

MCG1GRE1

1    guidelines calculation.  I think it's a substantial difference

2    in terms of the legal principles at stake about whether or not

3    the United States should be, you know, engaging in global

4    policing or should be enforcing U.S. law that is of domestic

5    application domestically.

6              So I think there are important principles at stake,

7    but because we haven't teed this up yet, we have not had a good

8    -- I think neither side has had a good opportunity to really

9    focus on what exactly is the evidence of U.S. based losses and

10   to evaluate the strength of that evidence and what number it

11   shows.  But I think it's going to be a number that's, you know,

12   within the realm of reason as compared to the top of the

13   guideline range.

14             THE COURT:  I'm not going to hold anyone to these

15   figures, but we're talking about a figure between 57,000 and

16   500 million?

17             MR. WEDDLE:  I don't think that's what the Court's

18   decision is going to be, but we're going to have to see what

19   the evidence is.  There was a footnote in I think one of

20   Mr. Scott's briefs that referenced a government affidavit about

21   the percentage of OneCoin membership that was in the United

22   States versus elsewhere, and that number was one and a half

23   percent.  I think that -- I don't know if that's proveable by

24   the government, but if that was provable, I think that would

25   set a ceiling on the number, and one and a half percent of a

MCG1GRE1

1    couple billion dollars is, you know, still tens of millions of

2    dollars.

3          THE COURT:  Mr. Folly, anything you wanted to put on

4    the record?

5          MR. FOLLY:  Your Honor, I think we were talking about

6    a significant difference between the global investor losses

7    versus just U.S. investors, and, you know, global investor

8    losses is going to be in the billions whereas U.S. investor

9    losses are going to be in the tens of millions.

10         THE COURT:  Okay.  Very well.  So I look forward to

11   receiving your papers.

12         Is there anything else that we should do today, Mr.

13   Folly?

14         MR. FOLLY:  Your Honor, one piece of housekeeping in

15   light of the two additional open counts that the defendant did

16   not plead guilty to here today.  The government would move to

17   exclude time on those counts through the current April 5th

18   control date for the sentencing.  We understand defense counsel

19   does not have an objection to that.  And we would also move to

20   adjourn the current trial date indefinitely in light of this

21   plea and the current status of the case.

22         THE COURT:  I guess I'm a little perplexed by the

23   request.  If he's plead guilty and the only issues that we're

24   talking about are what will the length of the sentence be, why

25   would we need to adjourn a trial that's not going to go

MCG1GRE1

1    forward?

2                   MR. FOLLY:  Your Honor, we do not believe a trial will

3    need to go forward.  However, there is not a judgment of

4    conviction as to these counts yet.  Those counts are still open

5    on the underlying indictment.  So in an abundance of caution,

6    we would move to exclude time on those counts and just adjourn

7    the trial date indefinitely.

8                   THE COURT:  Any objection?

9                   MR. WEDDLE:  No, your Honor.

10                  THE COURT:  Very well.  That time will be excluded

11   under the Speedy Trial Act.

12                  I find that Mr. Greenwood's interest in having these

13   issues finally determined outweigh -- these very substantial

14   issues concerning the guidelines outweigh the interest of the

15   public in a speedy trial, so that time will be excluded until

16   April 5, was it?

17                  THE DEPUTY CLERK:  Yes.

18                  THE COURT:  Until April 5.

19                  Anything more?

20                  Mr. Folly?

21                  MR. FOLLY:  No, your Honor.

22                  THE COURT:  Mr. Weddle?

23                  MR. WEDDLE:  Just, your Honor, I made a long speech,

24   but at the close of the plea proceeding, your Honor directed

25   the preparation of the presentence investigation report.  And,

MCG1GRE1

 1    as I said, we agree it should start, but can I impose on your

 2    Honor to recommend or direct probation not to conduct a

 3    guidelines analysis while we're trying to brief the issues?

 4              THE COURT:  Any objection to that, Mr. Folly?

 5              MR. FOLLY:  No, your Honor.

 6              THE COURT:  I mean, I'm happy to do that, although

 7    probation only makes a recommendation, so it would be to no

 8    particular legal effect, but I will make that recommendation.

 9              Okay.  Folks, we are adjourned.

10              (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25