UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,                          :

                                           :        S16 17 CR. 630 (ER)

             -against-

                                           :

KARL SEBASTIAN GREENWOOD,

                                         :

                         *Defendant.*

-------------------------------------------------------------------X

## KARL SEBASTIAN GREENWOOD'S REPLY IN SUPPORT OF MOTION FOR THE INCLUSION OF ONLY U.S. CRIMINAL CONDUCT AT SENTENCING

JUSTIN S. WEDDLE
JULIA I. CATANIA
BRIAN WITTHUHN
WEDDLE LAW PLLC
250 West 55th Street
30th Floor
New York, NY 10019
(212) 997-5518
jweddle@weddlelaw.com

HOWARD LEADER
534 West 112th Street
New York, NY 10025
(646) 533-7696
howard.leader@gmail.com

*Attorneys for Karl Sebastian Greenwood*

March 8, 2023

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT ......................................................................................... 2

I.   Mr. Greenwood's Motion Does Not Seek to Escape Responsibility ..................... 2

II.  The Prosecution Cannot Use Sentencing to Expand the Limits of the
     Statutes of Conviction ................................................................. 3

     A.  Artful Pleading Cannot Expand the Scope of the Offenses of Conviction ...... 4

     B.  (Domestic) Wire Fraud Proceeds Are the Only Funds Underpinning the
         Money Laundering Charges in This Case ...................................... 8

III. *Azeem* Is the Law of the Circuit and Applies Here .............................. 11

     A.  *Azeem*'s Rule and Reasoning Apply Equally to "Common Scheme or Plan"
         and "Same Course of Conduct" .............................................. 12

     B.  The Prosecution's Argument that *Azeem's* Rule Is Narrow and Possibly
         Abrogated Is Without Basis ................................................ 16

     C.  Nothing About Section 2B1.1 or 2S1.1 Alters *Azeem*'s Rule or
         Its Application Here ...................................................... 18

CONCLUSION ................................................................... 22

TABLE OF AUTHORITIES

## Cases

*Bascuñán v. Elsaca,*
   927 F.3d 108 (2d Cir. 2019) ................................................................... 5, 7

*Beckles v. United States,*
   580 U.S. 256 (2017) ................................................................................ 16

*Close v. New York,*
   125 F.3d 31 (2d Cir. 1997) ...................................................................... 15

*County of Allegheny v. ACLU,*
   492 U.S. 573 (1989) ................................................................................ 14

*Kaplan v. S.A.C. Cap. Advisors, L.P.,*
   104 F. Supp. 3d 384 (S.D.N.Y. 2015)........................................................ 4

*Kisor v. Wilkie,*
   139 S. Ct. 2400 (2019) .............................................................................. 8

*RJR Nabisco, Inc. v. Eur. Cmty.,*
   579 U.S. 325 (2016)................................................................................... 5

*United States v. Adelson,*
   441 F. Supp. 2d 506 (S.D.N.Y. 2006)........................................................ 8

*United States v. Azeem,*
   946 F.2d 13 (2d Cir. 1991) ............................................................... passim

*United States v. Banks,*
   55 F.4th 246 (3d Cir. 2022)....................................................................... 8

*United States v. Catchings,*
   708 F.3d 710 (6th Cir. 2013)..................................................................... 3

*United States v. Chmielewski,*
   218 F.3d 840 (8th Cir. 2000).................................................................... 19

*United States v. Chunza-Plazas,*
   45 F.3d 51 (2d Cir. 1995) ............................................................. 14, 17, 18

*United States v. Cornelson,*
  No. 15 CR. 516 (JGK), 2022 WL 2334054 (S.D.N.Y. June 27, 2022)........................ 7

*United States v. Dawn,*
  129 F.3d 878 (7th Cir. 1997)............................................................................. 14

*United States v. Elbaz,*
  52 F.4th 593 (4th Cir. 2022) ............................................................................ 6

*United States v. Enwerem,*
  482 F. App'x 869 (4th Cir. 2012) ..................................................................... 20

*United States v. Greer,*
  285 F.3d 158 (2d Cir. 2002) ........................................................................ 18, 21

*United States v. Hoskins,*
  902 F.3d 69 (2d Cir. 2018) ................................................................................ 7

*United States v. Khodadad,*
  122 F.3d 1058, 1995 WL 595073 (2d Cir. Sept. 12, 1995)....................................... 18

*United States v. Lazarenko,*
  564 F.3d 1026 (9th Cir. 2009).......................................................................... 10

*United States v. Napout,*
  963 F.3d 163 (2d Cir. 2020) ........................................................................... 6, 7

*United States v. Okike,*
  60 F. App'x 100 (9th Cir. 2003) ...................................................................... 20

*United States v. Parkins,*
  935 F.3d 63 (2d Cir. 2019) .............................................................................. 16

*United States v. Pasquantino,*
  544 U.S. 349 (2005)....................................................................................... 19

*United States v. Perdomo,*
  927 F.3d 111 (2d Cir. 1991) ............................................................................ 13

*United States v. Teyer,*
  322 F. Supp. 2d 359 (S.D.N.Y. 2004)................................................................. 17

*United States v. Turner*,
   624 F. Supp. 2d 206 (E.D.N.Y. 2009) ................................................................. 14, 18

*Whalen v. United States*,
   445 U.S. 684 (1980) ...................................................................................... 4

*Witte v. United States*,
   515 U.S. 389 (1992) ...................................................................................... 3

**Statutes**

18 U.S.C. § 1956(a)(1)(B) ................................................................................ 8

18 U.S.C. § 1956(a)(2)(A) ................................................................................ 9

18 U.S.C. § 1956(a)(2)(B) ................................................................................ 9

18 U.S.C. § 1956(c)(7)(B) ............................................................................. 9, 10

**Other Authorities**

U.S.S.G. § 1B1.3, cmt. n.1 (2016) ...................................................................... 3

U.S.S.G. § 1B1.3, cmt. n.3(B) (2016) .................................................................. 3

U.S.S.G. § 1B1.3, cmt. n.5(B)(i) (2016) ............................................................. 15

U.S.S.G. App. C .......................................................................................... 17

United States Sentencing Commission, Notice of Proposed Amendments,
   57 Fed. Reg. 90-01, 1992 WL 146 (Jan. 2, 1992) ................................................. 18

Public Comment, Proposed Amendments 1992 .......................................................... 18

## PRELIMINARY STATEMENT

In our opening brief, we demonstrated that controlling Second Circuit authority, including *United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991), holds that the Sentencing Guidelines analysis must be applied to U.S. criminal conduct—"i.e., evidence of defrauded U.S.-based OneCoin investors, evidence of the laundering of U.S.-sourced criminal proceeds, or evidence of fraudulent conduct perpetrated within the United States in which Mr. Greenwood participated." ECF 516 at 1. The prosecution's opposition brief has no real answer to this clear binding authority. Instead, the prosecutors do three main things. *First*, they conflate the scope of criminal liability—i.e., the reach and jurisdiction of U.S. criminal statutes—with the scope of Guidelines punishment recommendations, even though *Azeem* and the Guidelines say those things are not the same. *Second*, in circular fashion, they argue that foreign conduct can be shoehorned into the wire fraud offense of conviction because *they say it is* part of the wire fraud offense. The same circularity infects the prosecutors' arguments about the scope of the money laundering charge—even if financial transactions at issue were conducted in the United States, those transactions are only "laundering" transactions if they involve the "proceeds" of wire fraud, and the prosecutors' only argument that global OneCoin revenues are the proceeds of (domestic) wire fraud is their say-so. *Third*, the prosecutors deny, ignore, and flat-out misrepresent the rule, reasoning, and application of *Azeem*.

On Mr. Greenwood's behalf, we request that this Court abide by the binding authority of *Azeem*, reject the prosecutors' circular arguments, and issue an order

confirming that it will calculate the applicable Sentencing Guidelines based on U.S. criminal conduct.

**ARGUMENT**

## I.  MR. GREENWOOD'S MOTION DOES NOT SEEK TO ESCAPE RESPONSIBILITY

The prosecutors' brief conflates the scope of criminal liability—that is, the reach and jurisdiction of U.S. criminal statutes—with the scope of punishment under the Guidelines, claiming that Mr. Greenwood seeks to "escape responsibility" by requesting that the Court apply the Guidelines based on U.S. criminal conduct, as the Second Circuit says it must. By permitting his lawyers to seek to have the sentencing conducted according to law, Mr. Greenwood is in no way attempting to escape responsibility or obtain immunity. Mr. Greenwood pled guilty and agreed that his participation in fraud targeting the United States using U.S. wires can be prosecuted and punished here, as can his participation in a conspiracy to launder proceeds of that U.S.-targeted fraud. He has already been incarcerated for more than four years in onerous and at times horrific conditions—a period in which the Speedy Trial Act's time limitations were breached several times over. And he understands and accepts that a proper application of the Guidelines will likely result in a recommended term of imprisonment far outstripping the time he has already served. Thus, the result of the instant briefing will determine the scope of the recommended *punishment* of Mr. Greenwood, not his liability.

*Azeem* is the leading and controlling case on the proper scope of the Guidelines analysis, and it holds that the analysis should be based on U.S. criminal conduct, not

2

any conduct, U.S. or foreign, legal or illegal, so long as there is a jurisdictional "hook."[1] Under the Guidelines and controlling Second Circuit authority, these issues are distinct, and in the circumstances here, application of both authorities compels the conclusion that Mr. Greenwood's Guidelines analysis should be based on U.S.-targeted or -perpetrated fraud and the laundering of the proceeds of that U.S. targeted fraud, as further explained below. *See Azeem*, 946 F.2d at 17-18; U.S.S.G. § 1B1.3, cmt. nn.1, 3(B) (2016).

## II. THE PROSECUTION CANNOT USE SENTENCING TO EXPAND THE LIMITS OF THE STATUTES OF CONVICTION

The prosecution's brief substitutes fallacy for law when it argues that because the prosecution alleged that the fraud here involved "solicitation throughout the world," if the fraud is a wire fraud, the wire fraud includes all conduct "throughout the world." *See* ECF 519 at 15-18. That same circularity infects the prosecution's argument that the financial transactions conducted in the United States by U.S. participants means that the money laundering conspiracy Guidelines encompass global OneCoin revenues. Those transactions constitute "money laundering" *only* if they involve the proceeds of a specified unlawful activity or promote a specified unlawful activity, and the only specified unlawful activity here is (domestic) wire

---

[1] It should go without saying that the Guidelines' "relevant conduct" analysis refers to *criminal* conduct, *see Witte v. United States*, 515 U.S. 389, 402 (1992) (defining relevant conduct as "arising out of the same course of *criminal conduct* as the instant offense" (emphasis added)); *see also United States v. Catchings*, 708 F.3d 710, 720 (6th Cir. 2013) ("Although relevant conduct is not limited to conduct for which the defendant has been convicted, the conduct must amount to an offense for which a criminal defendant could potentially be incarcerated. . . . In short, relevant conduct under § 1B1.3 must be criminal conduct." (internal citations omitted)), and, as explained herein and in our opening brief, *Azeem*'s rule and the text of the Guidelines demonstrate that this means *U.S.* criminal conduct.

fraud. Thus, the only "conduct" that constitutes "laundering" is conduct that involves the proceeds of that domestic fraud.

## A. Artful Pleading Cannot Expand the Scope of the Offenses of Conviction

While conceding, as it must, that the wire fraud statute has domestic reach, *see* ECF 519 at 7, the prosecution nevertheless argues that in this case, the wire fraud is global because the prosecution says it is global. *See generally* ECF 519. The prosecution cites no authority suggesting that it can change the scope of a non-extraterritorial criminal statute with artful Information-drafting. Permitting such a result does violence to the two principles of law discussed in our opening brief—the presumption against extraterritoriality and the prohibition against enforcing foreign penal laws, *see* ECF 516 at Part II(A) and (C)—as well as to the "basic principle that within our federal constitutional framework . . . the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them[] resides wholly with the Congress," not prosecutors, *Whalen v. United States*, 445 U.S. 684, 689 (1980). Nor could Mr. Greenwood's allocution accepting responsibility for a domestic wire fraud crime expand the reach of that statute. *See Kaplan v. S.A.C. Cap. Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015) (Marrero, J.) ("[A]n indictment is simply an allegation—a charge by the Government as to what conduct a defendant has committed. When a defendant pleads guilty and allocutes to criminal conduct, it is only that specific conduct which the guilty plea incorporates.").[2] Indeed,

---

[2] The prosecution has made a number of factual claims in its brief. The Court has already adopted the decisionmaking structure proposed by the defense (without objection from the prosecution), and thus

according to the prosecution's argument, *Azeem* would have been decided the opposite way if the prosecutors had simply alleged that Azeem participated in a unitary scheme to distribute Pakistani heroin "throughout the world, including New York." Such prosecutorial phraseological choices should not and cannot drive the application of the Guidelines analysis, let alone the scope of conduct that constitutes a crime against the United States.

In making such an argument, s*ee* ECF 519 at 7-8, the prosecution ignores and misapplies the law. The Supreme Court instructed that where a statute is presumptively not extraterritorial—as is wire fraud—the next step is to "determine whether the case involves a domestic application of the statute," which in turn is determined "by looking at the statute's 'focus.'" *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016). The Second Circuit in *Bascuñán* found that the focus of the wire fraud statute is the use of wires, not the scope of the scheme:

> There are three "essential elements" to mail or wire fraud: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) *use of the mails or wires to further the scheme.*" [*United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (emphasis added)]. These elements make clear that the regulated conduct is not merely a "scheme to defraud," but more precisely *the use of the mail or wires in furtherance of a scheme to defraud*.

*Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) (emphasis in original). Moreover, "to haul essentially foreign allegedly fraudulent behavior into American courts, the use of the wires must be *essential*, rather than merely incidental, to the

---

should disregard those claims until the second stage of that structure, during which the prosecution will bear the burden of proving its factual claims with evidence.

scheme to defraud." *United States v. Napout*, 963 F.3d 163, 179 (2d Cir. 2020) (emphasis added).

Mr. Greenwood's wire fraud offense of conviction, therefore, *is the targeting of the U.S. OneCoin market through the use of U.S. wires*, or fraud perpetrated within the U.S. using those wires, not all conduct occurring anywhere and targeting anyone so long as the prosecution declares it to be a unitary "OneCoin scheme." Mr. Greenwood has not argued, as the prosecution seems to suggest, that the wire fraud statute is "cabined to conduct that is entirely domestic." *See* ECF 519 at 7-8. Mr. Greenwood has accepted responsibility and pled guilty to three charges; his argument nowhere suggests that he or other "offshore fraudsters" should be "effectively immunize[d] from mail or wire fraud." *See* ECF 519 at 8. His argument is instead that the prosecution should not be permitted to impose punishment based on foreign criminal conduct, and that the Sentencing Guidelines analysis should be based only on U.S. criminal conduct—a straightforward application of *Azeem*.

The analysis is no different for the conspiracy to commit wire fraud charge, since only a U.S. crime can be an object of a conspiracy under Section 1349. *See United States v. Elbaz*, 52 F.4th 593, 605 n.6 (4th Cir. 2022) ("In some abstract sense, [an agreement to defraud people around the world using wires] is a 'conspiracy' to commit 'wire fraud.' But this extraterritorial 'wire fraud' is not the crime of wire fraud under the United States Code. And since it is not a crime, it cannot be the object of a conspiracy under the United States Code."). As the Second Circuit has stated, "conspiracy and complicity statutes . . . do not create new substantive offenses, but

6

merely allow liability for other legal violations. Accordingly, courts have repeatedly ruled that the extraterritorial reach of . . . conspiracy is coterminous with that of the underlying criminal statute." *United States v. Hoskins*, 902 F.3d 69, 96 (2d Cir. 2018) (internal citations omitted). That is, a conspiracy is not an agreement to commit crime, *simpliciter*.[3]

The prosecution's contention that the words it chooses to charge someone changes the scope of the offenses of conviction is plainly wrong.[4]

---

[3] The prosecutors suggest that *Bascuñán*, *Napout*, and *Cornelson* support their claim that they routinely prosecute and punish worldwide conduct, *see* ECF 519 at 7-8, but those cases do not. Although the courts in those cases analyzed issues of extraterritoriality (not Guidelines or punishment), that analysis nevertheless indicates that those prosecutions likely involved conduct fitting within the rule of *Azeem* (and Mr. Greenwood's motion). *See* ECF 516 at 2-3. Thus, the *Bascuñán* court determined that the complaint alleged a wire fraud (and mail fraud) scheme that sufficiently focused on domestic conduct because "[a] core component of each allegation is that [the defendant] repeatedly used domestic mail or wires to order a New York bank to fraudulently transfer money out of a New York bank account." *Bascuñán*, 927 F.3d at 123. In *Napout*, the defendant-appellants "used American wire facilities and financial institutions to carry out their fraudulent schemes," by paying bribes with money wired from U.S. bank accounts, depositing bribe payments into U.S. banks, and using a debit card connected with the U.S. bank account. *Napout*, 963 F.3d at 180-81; *see also United States v. Cornelson*, No. 15 CR. 516 (JGK), 2022 WL 2334054, at *4 (S.D.N.Y. June 27, 2022) (involving fraud relating to U.S.-listed securities). By contrast, it is not clear that the prosecutors here have concentrated on enforcing U.S. law, as opposed to finding a "hook" to enforce foreign law—the prosecutors' brief admits that in the years they have spent investigating and prosecuting the OneCoin fraud, they have never determined the number of U.S. victims, nor the amount of their loss, *see* ECF 519 at 5-6 (stating "many" victims resided in the United States and that their "*current estimate* of the amount of loss suffered by victims in the United States is *likely* above $50 million." (emphasis added)). Even this estimate shows that this prosecution is an outlier compared to typical prosecutions involving cross-border conduct—here, according to the prosecutors' estimate, U.S. criminal conduct accounts for a small fraction—likely less than 1%—of the global figure the prosecutors seek to use. *Id.* By contrast, the cases the prosecutors cite to denigrate *Azeem* involved punishments driven by wholly U.S. criminal conduct, or at the very least, the U.S. criminal conduct was not a domestic tail that wagged the foreign dog. *See* **Appendix**.

[4] The prosecution, in a footnote, falls back on the notion of "intended loss," based on a launch-day webinar in which co-conspirator Ruja Ignatova purportedly "explained their plan to 'catch Bitcoin,'" which had an $11.7 billion valuation, ECF 519 at 10 n.2. "Intended loss," however, is not a cure-all for the prosecution's problem that wire fraud is not extraterritorial. "Intended losses" are the concrete losses that a "defendant purposely sought to inflict," U.S.S.G. § 2B1.1, cmt. n.3(A)(ii) (2016), they *are*

7

**B. (Domestic) Wire Fraud Proceeds Are the Only Funds Underpinning the Money Laundering Charges in This Case**

The prosecution incorrectly claims that regardless of *Azeem*'s effect on the wire fraud Guidelines analysis, the money laundering charge involved conduct perpetrated within the United States that sweeps in worldwide OneCoin revenue. *See* ECF 519 at 22. The problem is that in this case, the only specified unlawful activity that generated the "proceeds" that were "laundered" is (domestic) wire fraud, and thus the only funds that are pertinent to analyzing the money laundering Guidelines are proceeds of (domestic) wire fraud—i.e., OneCoin revenue generated through the use of U.S. wires, not worldwide OneCoin revenue. In other words, the crime of "money laundering" does not describe simply the conduct of engaging in financial transactions, but rather it is limited to engaging in U.S. financial transactions with the proceeds of a specified unlawful activity. *See* 18 U.S.C. § 1956(a)(1)(B)(i) ("Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful

---

*not* the aspirational, theoretically-limitless amounts a fraudster dreams of obtaining from his scheme. After all, Guidelines calculations—particularly those under Section 2B1.1—must be "cabined by common sense" lest "the guidelines' fetish with abstract arithmetic" lead to a result that constitutes an "utter travesty of justice." *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (Rakoff, J.). To the extent "intended loss" becomes relevant, we request an opportunity to submit briefing on the issue, including whether the concept of "intended loss"—which is found only in a commentary to Section 2B1.1, not in the text of the Guideline itself—remains valid in the wake of the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). *See United States v. Banks*, 55 F.4th 246, 255-56 (3d Cir. 2022) (holding, post-*Kisor*, that plain meaning of "loss" in the text of Section 2B1.1 does not include "intended loss," regardless of effort to expand the definition of "loss" in the commentary to that section).

activity"); 18 U.S.C. § 1956(a)(2)(B)(i) ("knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity . . . to conceal . . . the ownership, or the control of specified unlawful activity"); 18 U.S.C. § 1956(a)(2)(A) (criminalizing "intent to promote the carrying on of specified unlawful activity"). The prosecution's circular argument—because the prosecution says that the OneCoin fraud occurred "throughout the world," the wire fraud charge encompasses conduct throughout the world—is no more effective in converting worldwide OneCoin revenue into the proceeds of (domestic) wire fraud than it is in converting entirely foreign OneCoin conduct into a violation of the (domestic) wire fraud statute.

The prosecution's references to specified unlawful activities that are expressly extraterritorial (but play no part in the charges here) refute the prosecution's argument. The prosecution states, unremarkably, that "the money laundering statute is not limited solely to laundering the proceeds of U.S. crimes," then cites 18 U.S.C. § 1956(c)(7)(B), which defines "various offenses 'against a foreign nation' as specified unlawful activities under the statute." ECF 519 at 23. But fraud, such as soliciting individuals "throughout the world" to buy OneCoin by means of false representations, *is not one of those "various offenses."* Rather, Congress made express and clear choices about *which* offenses "against a foreign nation" are within the definition of "specified unlawful activity," and conspicuously omitted simple fraud. 18 U.S.C. § 1956(c)(7)(B) (listing offenses against a foreign nation such as controlled substance offenses, murder, crimes of violence, and bribery). Congress chose only to include "fraud" "by

9

or against a foreign bank" within the definition. 18 U.S.C. § 1956(c)(7)(B)(iii). Accordingly, a violation of, say, Ukrainian fraud law that is not "by or against a foreign bank" is not a specified unlawful activity.

The case cited by the prosecution—*United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009)—confirms this analysis. Lazarenko's money laundering convictions were predicated on financial transactions involving the proceeds of foreign *extortion*, not fraud, and the definition of "specified unlawful activity" specifically includes "an offense against a foreign nation involving" "extortion." 18 U.S.C. § 1956(c)(7)(B)(ii). That is why those money laundering counts were upheld although the wire fraud convictions were reversed. *Id.* at 1037-38.

Here, Mr. Greenwood did not participate in a money laundering conspiracy involving the proceeds of a specified unlawful activity, "to wit, an offense against a foreign nation enumerated in Section 1956(c)(7)(B)"; he instead participated in a conspiracy to launder the "proceeds of specified unlawful activity, to wit, *the proceeds of the wire fraud scheme* alleged in Counts One and Two of this Information." ECF 510 (Information) at 4 (emphasis added). The prosecution cannot expand the scope of the Guidelines analysis using uncharged and inapplicable specified unlawful

activities.[5] Any Guidelines calculation must be based on the U.S.-connected laundering of "proceeds" derived from U.S. wire fraud victims.[6]

## III. *AZEEM* IS THE LAW OF THE CIRCUIT AND APPLIES HERE

In addition to its effort to shoehorn foreign conduct into an otherwise inapplicable wire fraud "offense of conviction" by fiat, the prosecution's brief attacks, rather than honors, the Second Circuit's binding decision in *Azeem*. The prosecution's argument should be rejected, and this Court should apply binding Second Circuit authority and conduct its Guidelines analysis based on U.S. criminal conduct.

---

[5] The prosecution's footnote about direct versus indirect money launderers, *see* ECF 519 at 24 n.12, which purports to reduce the defense argument to a "bizarre" result, makes no sense and rests on a fundamental (and, again, circular) flaw—it incorrectly assumes that all fraud proceeds worldwide constitute "proceeds" that are "specified unlawful activities" subject to the money laundering statute. They are not. If the fraud that victimized those hypothetical foreign victims used U.S. wires to do so or resulted from an "offense against a foreign nation involving" "fraud by . . . a foreign bank," then *all* of the $600 million would be the proceeds of a specified unlawful activity (as would the $10,000 in losses from U.S. victims of the same fraud). There would be no incongruous result, therefore, if a defendant did or did not participate in the underlying fraud—the pertinent amount of money would be the same. If, on the other hand, the $600 million of losses by "foreign victims" resulted from a non-U.S. fraud that did not involve the use of the U.S. wires, but the same fraudsters used the same fraud *and* U.S. wires to generate $10,000 from victims, then *none* of the $600 million would constitute the proceeds of a specified unlawful activity, while all of the $10,000 would. The Guidelines analysis for both a direct and indirect money launderer would again be the same—the $10,000 in U.S. wire fraud proceeds.

[6] The prosecution's argument that "actions by the defendant's co-conspirators are plainly sufficient to place the defendant's conduct within the jurisdictional reach of the money laundering statute," *see* ECF 519 at 23-24, makes no difference. Mr. Greenwood never set foot in the United States as part of the fraud, and nevertheless agrees that engaging in financial transactions by wire—even by co-conspirators—that involve the proceeds of the specified unlawful activity involved in this case (i.e., wire fraud) is punishable in the United States. That is why Mr. Greenwood accepted responsibility and pled guilty, and why we are discussing differences in the term of imprisonment to which he will be sentenced rather than disputing liability.

11

### A. *Azeem*'s Rule and Reasoning Apply Equally to "Common Scheme or Plan" and "Same Course of Conduct"

*Azeem* requires that foreign conduct be excluded from the Sentencing Guidelines calculation except where the Guidelines *expressly* incorporate it. *Azeem*, 946 F.2d at 16-18. The prosecution incorrectly argues that *Azeem*'s holding permits the inclusion of foreign conduct that is part of a "common scheme" with the offense of conviction into the Sentencing Guidelines calculation. *See* ECF 519 at 10-18. Such an argument directly conflicts with *Azeem*, has no support in or outside of the Second Circuit, and fails on the merits.

*Azeem* did not create a different rule for when foreign conduct is alleged to be part of a "common scheme or plan" but not the "same course of conduct as the offense of conviction" when analyzing Section 1B1.3(a)(2) of the Sentencing Guidelines. *See* 946 F.2d at 16-17. For, as the prosecution acknowledges, "these categories are a distinction without a difference" and "courts take the conduct into account as long as it fits into any one of the three categories, and courts therefore need not determine which of the three categories apply." ECF 519 at 12-13.

In *Azeem*, the defendant argued "that the Cairo heroin should not have been included with the New York heroin in his base offense level" because "each transaction was the object of a different conspiracy" and they were "not part of a common scheme." 946 F.2d at 16. The Second Circuit apparently found it unnecessary to consider whether the transactions were part of one or two conspiracies (i.e., in the prosecution's formulation, the same "offense of conviction"), or whether they were part of a "common scheme," because regardless, they were part of the "same course of

conduct." As the Court noted, Section 1B1.3 has multiple options: transactions that are "'part of the same course of conduct *or* common scheme or plan as the offense of conviction.'" *Id.* (quoting Section 1B1.3(a)(2)) (emphasis in original). And, having affirmed the district court's determination that the Cairo and New York transactions were "the same course of conduct," the Second Circuit had no need to analyze the other phrases because they did not create distinctions that affected its holding regarding the exclusion of foreign conduct.

If it *had* analyzed these phrases, *Azeem* certainly would have found that the transactions were part of a "common scheme" *as well as* "the same course of conduct." After noting that "same course of conduct" differs from "common scheme" because the former does not require that the acts be "connected by common participants or an overall scheme," the Court cited *United States v. Perdomo*, 927 F.3d 111 (2d Cir. 1991), which it parenthetically described as involving the "same course of conduct" (and presumably not a "common scheme") because of months-long intervals between transactions and different participants. *Azeem*, 946 F.2d at 16. Notably, in the next two sentences, the Court emphasized that "Azeem used the same courier" for both transactions, and that Azeem's transactions occurred in close temporal proximity. *Id.* These statements telegraph that the Court implicitly rejected Azeem's argument that the transactions were not part of the same conspiracy or a common scheme. In any event, nothing about this discussion suggests that, in the Second Circuit's view, the Guidelines analysis for "common schemes" should include foreign criminal conduct, but the Guidelines analysis for "same course of conduct" should not.

13

It should come as no surprise, then, that *no* court—neither the Second Circuit itself, district courts in the Second Circuit, nor out-of-circuit courts—has ever confined *Azeem* in the ways the prosecution urges here, and the prosecution cites no support whatsoever for its position. Instead, when applying *Azeem*, the district court in *Turner* looked to whether the defendant's foreign crimes constituted "the same course of conduct" *or* a "common scheme" (or both). *See United States v. Turner*, 624 F. Supp. 2d 206, 211 (E.D.N.Y. 2009) (foreign conduct "fit comfortably within the ambit of the Guideline's definition of relevant conduct as both part of a common scheme and as part of the same course of conduct").[7]

Moreover, the prosecution's attempt to avoid *Azeem*'s binding authority by positing different treatment of foreign criminal conduct for "common scheme" and "same course of conduct" should be rejected for another reason—it would require the Court to violate *Azeem*'s binding interpretive methodology. *See County of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to *their explications of the governing rules of law*." (emphasis added));

---

[7] The prosecution's halfhearted argument that foreign losses and laundered funds should impact Mr. Greenwood's sentencing calculation because the losses and funds are "closely intertwined" is meritless. The argument relies on the Seventh Circuit's decision in *United States v. Dawn* that found *Azeem* and *United States v. Chunza-Plazas*, 45 F.3d 51 (2d Cir. 1995), distinguishable because of the particular facts of that child pornography case. *See* ECF 516 at 11-12. As explained in our opening brief, *Dawn*'s reasoning does not apply here because Dawn, who was convicted of receiving and possessing child pornography, was a U.S. citizen who filmed the explicit activity in Honduras before transporting it to the United States where he developed it. *See United States v. Dawn*, 129 F.3d 878, 879-80 (7th Cir. 1997). The prosecution's "closely intertwined" argument also fails as a matter of textual interpretation: Section 1B1.3(a)(2) says "common scheme or plan" and "same course of conduct"; the Court should not add another category, "closely intertwined foreign criminal conduct," that is found nowhere in the text (nor even in the *commentary*) of the Guideline.

*Close v. New York*, 125 F.3d 31, 38 (2d Cir. 1997) ("we rely on the rationale set forth in" binding authority, not merely the result). To reach its result, *Azeem* stated that the Court was required to "establish [the Guidelines'] intent with respect to the issue of foreign crimes and activities," and it did that by starting with "the language of the Sentencing Guidelines themselves." 946 F.2d at 17. By analyzing that language, the Court found that "Congress . . . has chosen to assign to foreign crimes a rather limited role," and thus established an interpretive rule for the Guidelines—that foreign criminal conduct should *not* be included in sentencing calculations except where the Guidelines expressly state that it should. *Id.*

This interpretive rule and methodology compel the same treatment of "common scheme" and "course of conduct" and refute the prosecution's argument. Textually, the two phrases are in the very same provision, Section 1B1.3(a)(2). The Second Circuit also observed that this provision is silent as to foreign conduct, unlike other parts of the Sentencing Guidelines, and thus found that "same course of conduct" does not include foreign conduct. *Id.* at 17. Section 1B1.3(a)(2) is equally silent with respect to any intent to include foreign conduct in the phrase "common scheme." *Id.* ("In this case, Congress has already shown that where it intends to include foreign crimes in sentencing, it will do so." (referring to U.S.S.G. §§ 4A1.2(h), 4A1.3(a))). The application notes to Section 1B1.3 inserted after *Azeem* was decided likewise are devoid of any express statement that "common scheme" includes non-U.S. criminal conduct. U.S.S.G. § 1B1.3, cmt. n.5(B)(i) (2016). Similarly, the policy reasons the Second Circuit explained—including the desire to avoid requiring sentencing courts

"to perform a careful comparative analysis of foreign and domestic law"—are not tied to a purported difference between "same course of conduct" and "common scheme." *Azeem*, 946 F.2d at 17; *see id*. at 18 ("Without a clear mandate from Congress, we decline to create the complexities that the inclusion of foreign crimes in the base offense level calculation would generate."). Even if it were a close call whether the distinction between "common scheme" and "same course of conduct" affects *Azeem*'s application here (it is not), the rule of lenity dictates that ambiguity in whether "common scheme" includes foreign crimes, but "same course of conduct" does not, must be resolved in favor of Mr. Greenwood.[8]

## B. The Prosecution's Argument that *Azeem's* Rule Is Narrow and Possibly Abrogated Is Without Basis

The prosecution resorts to misrepresentation in its attempt to erase the clear rule of *Azeem*. The prosecution falsely states that "*Azeem* was a case that interpreted the narcotics Guideline at Section 2D1.1." ECF 519 at 25. It could not be clearer that *Azeem interpreted* the relevant conduct Guideline—Section 1B1.3—in determining a appeal relating to a narcotics sentencing that *misapplied* 2D1.1 by calculating the Section 2D1.1 offense level based on foreign criminal conduct that was outside the scope of Section 1B1.3. Nowhere in *Azeem* did the Court even quote Section 2D1.1, let alone interpret it; in contrast, it quoted and interpreted Section 1B1.3, the relevant

---

[8] As it does with *Azeem*, the prosecution incorrectly suggests that this Court need not adhere to binding Second Circuit authority stating that the rule of lenity applies to the Guidelines. The prosecution claims that *Beckles v. United States*, 580 U.S. 256 (2017), "casts serious doubt on" the law in the Second Circuit that the rule of lenity applies to the Guidelines, ECF 519 at 22 n.11, but the Second Circuit has expressly reaffirmed, two years *after* the decision in *Beckles*: "That principle—the rule of lenity—applies to the Sentencing Guidelines." *United States v. Parkins*, 935 F.3d 63, 66 (2d Cir. 2019).

conduct Guideline, and announced a rule that the Guidelines do not include foreign conduct unless a provision of a Guideline expressly states an intent to take account of foreign conduct. *Azeem*, 946 F.2d at 16; *see United States v. Teyer*, 322 F. Supp. 2d 359, 367 n.3 (S.D.N.Y. 2004) ("In *Azeem*, the court made clear that foreign crimes should not be used to calculate a defendant's base offense level"). The prosecution's attempt to misrepresent, and thereby avoid, *Azeem* should be rejected.[9]

In addition, the prosecution's claim that a 1992 amendment to the Guidelines—Amendment 439—somehow implicitly abrogated *Azeem* finds no support in the text of the amendment or the amendment's history or public comments and is belied by caselaw and the U.S. Attorney's Office's own actions. The amendment was expressly stated to be "clarifying," rather than a substantive amendment, and nowhere in the text of that amendment is there any mention of foreign conduct. U.S.S.G. App. C at 315 ("This amendment clarifies and more fully illustrates the operation of this guideline."). Nowhere in the published notice of proposed amendments is there any mention of *Azeem* or the inclusion of foreign conduct. *See* United States Sentencing Commission, Notice of Proposed Amendments, 57 Fed. Reg.

---

[9] The prosecution's claim that *Chunza-Plazas* shows that *Azeems*'s holding is narrow is also wrong. *See* ECF 519 at 14. The fact that "the court in *Chunza-Plazas* held that the district court erred [in including foreign conduct for sentencing purposes] because the Medellin conduct fit in *none* of the three categories that a court should consider when calculating the Guidelines" only reinforces that "these categories are a distinction without a difference," not that they are essential in this analysis. ECF 519 at 12-13. Moreover, the prosecution is also wrong in attempting to cabin *Chunza-Plazas*' application of *Azeem* to "an upward departure under Section 5K2.9." ECF 519 at 25. In *Chunza-Plazas*, the district court applied an upward departure to the defendant's offense level *and* criminal history category, under Sections 5K2.0 and 5K2.9, and the Second Circuit found that both were improper under *Azeem* as "unrelated foreign conduct," 45 F.3d at 52-58.

90-01, 1992 WL 146 (Jan. 2, 1992). Nor do any of the public comments to those amendments, including the Department of Justice's 25-page single-spaced letter commenting on proposed amendments, make any mention of *Azeem* or any effect the amendment would or should have on the consideration of foreign criminal conduct. *See* Public Comment, Proposed Amendments 1992.[10] Nor does any case support the prosecutors' newfangled claim here, and the Second Circuit and district courts have repeatedly relied upon and cited *Azeem* without any mention of the prosecution's Amendment 439 theory. *See, e.g.*, *United States v. Greer*, 285 F.3d 158, 179 (2d Cir. 2002); *Chunza-Plazas*, 45 F.3d at 57; *Turner*, 624 F. Supp. 2d at 217 ("*Azeem* is the seminal Second Circuit case in which it was held that a defendant's foreign conduct should not be considered in the calculation of his base offense level given that such conduct was not a crime against the United States."). It is also belied by the concession of the U.S. Attorney's Office for the Southern District of New York—two-and-a-half years *after* Amendment 439 took effect—that the sentencing in *United States v. Khodadad* violated *Azeem* and must be remanded. 122 F.3d 1058, 1995 WL 595073, at *3 (2d Cir. Sept. 12, 1995). *Azeem* is good law, and the prosecution's arguments must be rejected.

## C. Nothing About Section 2B1.1 or 2S1.1 Alters *Azeem*'s Rule or Its Application Here

The prosecution next argues that the Court may sidestep the rule of *Azeem*—and turn it on its head—by finding that references to foreign banks, foreign conduct,

---

[10] Available at https://www.ussc.gov/policymaking/public-comment/comment-march-1992.

and extraterritorial crimes *in specific portions* of Section 2B1.1's enhancements should mean that *all* aspects of Section 2B1.1 include foreign conduct based on its unsupported claim that "[d]ifferent Guidelines should be interpreted differently." ECF 519 at 25-27; *see also* ECF 519 at 22 ("Much like the wire fraud counts of conviction, *Azeem* is inapplicable to calculating Greenwood's money laundering offense level under Section 2S1.1."). This not only violates *Azeem*'s rule and methodology, which say the opposite, but it flies in the face of the legal principle *Azeem* applied in reaching its result. *See Azeem*, 946 F.2d at 17 ("In general, congressional consideration of an issue in one context, but not another, in the same or similar statutes implies that Congress intends to include that issue only where it has so indicated."). In other words, specific reference to foreign banks, museums or conduct in certain enhancements (but not others) confirms, rather than refutes, *Azeem*'s rule that the Guidelines are presumed to apply only to U.S. criminal conduct except where expressly stated otherwise. *Id*. Neither Section 2B1.1 nor Section 2S1.1 contains such an express statement saying that foreign conduct applies in analyzing the entirety of either Section 2B1.1 or 2S1.1. This Court should decline the prosecution's invitation to disregard the Second Circuit's binding instructions on interpreting the Guidelines.[11]

---

[11] The prosecution erects a straw man by arguing that various cases "include foreign victims." ECF 519 at 20-22. The pertinent issue is not whether "foreign victims" are included; the issue is whether victims—foreign or domestic—are victims of U.S. crimes. Thus, for example, the fraud in *United States v. Pasquantino*, 544 U.S. 349 (2005), involved conduct perpetrated in the United States that victimized the Canadian government. This fits comfortably within the definition of U.S. criminal conduct described in our opening brief—i.e., evidence of defrauded U.S.-based victims, or evidence of (foreign or domestic) victims of fraudulent conduct perpetrated within the United States. *See* ECF 516 at 1. The Eighth Circuit's decision in *United States v. Chmielewski*, 218 F.3d 840, 841-43 (8th Cir. 2000),

Similarly, the prosecution's reliance on statutes with express extraterritorial reach, or caselaw involving such statutes, *see* ECF 519 at 26-27, does nothing either to change the rule of *Azeem*, expand Section 2B1.1 to reach foreign criminal conduct in all situations, or excuse this Court from its obligation to apply the Second Circuit's precedent. Indeed, each of those references is neatly explained by the Second Circuit's analysis in *United States v. Greer*, which reviewed a Guidelines calculation for a conviction under the U.S. Maritime Drug Law Enforcement Act ("MDLEA") relating to conduct in the territorial waters of Canada. According to *Greer*, where a criminal statute expressly includes foreign conduct within its reach, that conduct (regardless of where it geographically occurs) *is within the scope* of U.S. criminal conduct:

> Our holding that foreign drugs should be considered under § 1B1.3 is consistent with *United States v. Azeem*, 946 F.2d 13 (2d Cir.1991), in which we held that foreign crimes, that is, crimes not committed against the United States, should not be considered relevant conduct under § 1B1.3. . . . *By contrast, the crimes in this case are not foreign crimes; the MDLEA is a United States criminal statute that specifically covers conduct outside the United States. See United States v. Juda*, 46 F.3d 961, 966 (9th Cir. [1995]) ("Nothing in the language of the [MDLEA] limits its application to defendants who possess drugs intended for distribution in the United States.").

---

did not cite *Azeem* or analyze its reasoning, perhaps because the case involved crimes targeting the United States and its agencies, such as tax fraud and false statements directed at the United States, which also caused harm to South Africa. No such crimes are at issue here. The two unpublished, out-of-circuit cases cited by the prosecution should be disregarded. Neither cites nor analyzes *Azeem*, and neither is binding precedent *even in their own circuits*, let alone in the Second Circuit. *See United States v. Enwerem*, 482 F. App'x 869, 870 (4th Cir. 2012) ("Unpublished opinions are not binding precedent in this circuit"); *United States v. Okike*, 60 F. App'x 100, 101 (9th Cir. 2003) (unpublished decision "may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule").

*Greer*, 285 F.3d at 179-80 (emphasis added). In other words, consistent with *Azeem*, if a U.S. criminal statute expressly criminalizes conduct taking place outside U.S. territory, that conduct *is* U.S. criminal conduct for purposes of the Guidelines.

The extraterritorial reach of various uncharged, inapplicable statutes has nothing to do with the proper application of the Guidelines, consistent with *Azeem*, to this U.S. criminal conduct. Indeed, of the ten district court cases that the prosecution's brief lists to support the purported "obvious" "inapplicability of *Azeem*," ECF 519 at 28-29, eight fit comfortably within *Azeem*'s rule, *see* **Appendix**. Two cases are not clear enough to permit a fuller analysis, but in both of those cases (as in the remaining eight), neither party, nor the court, cited or analyzed *Azeem*, so the cases are not authority (let alone biding authority) affecting *Azeem*'s applicability in this case. *See id*. If anything, these cases demonstrate that the prosecutors' effort here to calculate the Guidelines based nearly entirely on foreign conduct is not at all typical or routine, it is unprecedented.

CONCLUSION

The Court should grant our motion and confirm that it will calculate the applicable Sentencing Guidelines offense level based on only U.S. criminal conduct consistent with the text of the Guidelines and the Second Circuit's rule of *Azeem*.

Dated:      March 8, 2023
            New York, New York

Respectfully submitted,

JUSTIN S. WEDDLE
JULIA I. CATANIA
BRIAN WITTHUHN
WEDDLE LAW PLLC
250 West 55th Street
30th Floor
New York, NY 10019
(212) 997-5518
jweddle@weddlelaw.com

HOWARD LEADER
534 West 112th Street
New York, NY 10025
(646) 533-7696
howard.leader@gmail.com

*Attorneys for Karl Sebastian Greenwood*