# 94-1693

---

## United States Court of Appeals
### For the Second Circuit

———— ◆ ————

UNITED STATES OF AMERICA,

*Appellee,*

-against-

PARVIZ KHODADAD,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

# JOINT APPENDIX

---

ROCHMAN PLATZER
FALLICK & STERNHEIM
*Attorneys for Defendant-Appellant*
*Parviz Khodadad*
666 Third Avenue, 17th Floor
New York, New York 10017
(212) 697-4090

MARY JO WHITE
*United States Attorney*
*Southern District of New York*
*Attorney for Appellee*
One St. Andrews Plaza
New York, New York 10007
(212) 791-0008

---

DICK BAILEY SERVICE   (212) 608-7666  (718) 447-5358  (516) 222-2470  (914) 682-0848  Fax: (718) 273-8031
1-800-531-2028

## TABLE OF CONTENTS

Page

DOCKET ENTRIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

PRESENTENCE REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

SENTENCING TRANSCRIPT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

```
Docket as of December 31, 1994 0:08 am                    Page 1
Proceedings include all events.                                    APPEAL
1:92cr488-1   USA v. Khodadad                              PRIOR

                                                     APPEAL PRIOR
                    U.S. District Court
       Southern District of New York - Civil Database (Foley Square)

                CRIMINAL DOCKET FOR CASE #: 92-CR-488-1

USA v. Khodadad                                    Filed: 06/05/92
Case Assigned to:  Judge John E. Sprizzo

PARVIS KHODADAD
      defendant

Pending Counts:                          Disposition

18:2314 TRANSPORTATION STOLEN
PROPERTY interstate transport
of stolen goods
(1)

18:2315 INTERSTATE COMMERCE
receipt and possess of stolen
property which crossed state
boundary
(2)

Offense Level (opening): 4

Terminated Counts:

    NONE

Complaints                               Disposition

18 USC 2314, 2: Interstate
transportation of stolen art.
[ 1:92-m -1057 ]

U. S. Attorneys:

   Katherine M. Choo
   [COR LD NTC]
   Otto G. Obermaier, United
   States Attorney
   Southern District of New York
   1 St. Andrews Plaza
   New York, NY 10007
```

**A 1**

Docket as of December 31, 1994 0:08 am                    Page 2

Proceedings include all events.                                              APPEA[
1:92cr488-1   USA v. Khodadad                              PRIOR

   (212) 791-1983

Docket as of December 31, 1994 0:08 am              Page 3

Proceedings include all events.                                        APPEAL
1:92cr488-1   USA v. Khodadad                              PRIOR

5/29/92   1      COMPLAINT as to Parvis Khodadad. Complaint ordered sealed. (
                 signed by Magistrate Judge Nina Gershon )
                 [ 1:92-m -1057 ] (dc) [Entry date 06/10/92]
                 [Edit date 06/10/92]

5/29/92   2      Arrest WARRANT issued as to Parvis Khodadad
                 [ 1:92-m -1057 ] (dc) [Entry date 06/10/92]

6/5/92    3      INDICTMENT as to Parvis Khodadad (1) count(s) 1, 2 (lf)
                 [Entry date 06/10/92]

6/8/92   --      Complaint unsealed by USA as to Parvis Khodadad
                 [ 1:92-m -1057 ] (dc) [Entry date 06/10/92]

6/11/92  --      ORAL ORDER  as to Parvis Khodadad , Adj. to 6/18/92, t/e'
                 to Continue in Interests of Justice  ( Entered by
                 Magistrate Judge Sharon Grubin ) (lf) [Entry date 06/11/92]

7/30/92  --      ORAL ORDER  as to Parvis Khodadad ,Adj to 9/3/92 to
                 Continue in Interests of Justice  ( Entered by Magistrate
                 Judge Sharon Grubin ) (lf) [Entry date 07/30/92]

9/3/92   --      ORAL ORDER  as to Parvis Khodadad ,Adj. to 10/1/92 t/e to
                 Continue in Interests of Justice  ( Entered by Magistrate
                 Judge Barbara A. Lee ) (lf) [Entry date 09/03/92]

10/1/92  --      ORAL ORDER  as to Parvis Khodadad ,Deft not pres, atty
                 Raymond Sussman pres, adj. to 10/15/92 t/e to Continue in
                 Interests of Justice  ( Entered by Magistrate Judge
                 Barbara A. Lee ) (lf) [Entry date 10/01/92]

10/15/92 --      Deft present with Atty Raymond Sussman...Arraignment as to
                 Parvis Khodadad held Parvis Khodadad (1) count(s) 1, 2
                 Bail set at $500,000 prb. before  Magistrate Judge Kathleen
                 A. Roberts (kr) [Entry date 10/15/92]

10/15/92 --      PLEA entered by Parvis Khodadad . Court accepts plea. Not
                 Guilty: Parvis Khodadad (1) count(s) 1, 2  (Terminated
                 motions - ) (kr) [Entry date 10/15/92]

10/15/92 --      CASE assigned  to Judge John E. Sprizzo (kr)
                 [Entry date 10/15/92]

10/15/92 4       Order of advice of penalties and sanctions as to Parvis
                 Khodadad ( signed by Judge John E. Sprizzo ) (kr)
                 [Entry date 10/15/92]

10/19/92 --      deft not present.  Pre-trial conference  as to Parvis
                 Khodadad held Defts. bail conditions continued. (kr)
                 [Entry date 10/20/92]

10/19/92 --      Pre-trial conference  as to Parvis Khodadad  set at 1:00
                 11/20/92 for Parvis Khodadad (kr) [Entry date 10/20/92]

A 2

Docket as of December 31, 1994 0:08 am          Page 4

Proceedings include all events.                                    APPEAL
1:92cr488-1    USA v. Khodadad                          PRIOR

11/20/92 --    Pre-trial conference  as to Parvis Khodadad  held. Deft not
               pres (Pres. waived) defense atty Ray Sussman pres. Gov't
               pres by Katherine Choo, AUSA; Cr. Rep. pres. PTC held. Next
               PTC 1/7/93 at 5. Time Excl. Deft's Bail cond's cont'd...
               SPRIZZO, J. (mk) [Entry date 11/23/92]

12/15/92 --    Pre-trial conference  as to Parvis Khodadad  held. kDeft
               not pres., defense atty pres. Roy Lsussman, Govt pres by
               Julie O'Sullivan, AUSA for Katherine Choo., Ct Rep. Bill
               Cohen. DEft's order to show cause to quash Got;'s subpoena
               mooted. Govt ordered not to peruse documents to show
               defense for objectioons. Next ptc 1/8/93. Deft's bail
               cond's cont'd. (Judge Sprizzo) (jh) [Entry date 12/22/92]

1/8/93 --      Status conference as to Parvis Khodadad  held deft. not
               pres.  Deft atty pres and Raymond Sussman. Gov't by
               Katherine Choo, AUSA., PTC held, next PTC. 2.8.93 at 5.
               time excluded.. (gb) [Entry date 01/11/93]

2/2/93 --      ORAL ORDER  as to Parvis Khodadad , reset Jury trial for
               5/23/94 for Parvis Khodadad. ( Entered by Judge John E.
               Sprizzo ) (ys) [Entry date 02/07/94]

2/11/93 --     Deft not present..Pre-trial conference  as to Parvis
               Khodadad held bail condtions continued. (kr)
               [Entry date 02/17/93]

2/16/93 --     Pre-trial conference  as to Parvis Khodadad  set at 5:00
               3/16/93 for Parvis Khodadad (kr) [Entry date 02/17/93]

3/5/93    5    ORDER as to Parvis Khodadad, to modified Bail for the
               weekend of 2/26/93 to 2/28/93. ON 2/26/93 and  2/28/93 the
               deft. shall be permitted to leave home during daylight
               hours for the purpose of performing obligatins necessitated
               by the Wedding of his daughter. ON 2/27/93 the day of the
               wedding, the Deft. shalb e released from house arrest for
               the entire day. Bond set to  for Parvis Khodadad. ( Signed
               by Judge John E. Sprizzo ); Copies mailed. (kr)
               [Entry date 03/08/93]

3/18/93 --     Deft not present. Pre-trial conference  as to Parvis
               Khodadad held Defts bail continued (kr)
               [Entry date 03/22/93]

3/18/93 --     Pre-trial conference  as to Parvis Khodadad  set at 5:00
               6/15/93 for Parvis Khodadad (kr) [Entry date 03/22/93]

3/18/93 --     Jury trial as to Parvis Khodadad  set at 12/6/93 for Parvis
               Khodadad (kr) [Entry date 03/22/93]

Docket as of December 31, 1994 0:08 am          Page 5

Proceedings include all events.                                    APPEAL
1:92cr488-1    USA v. Khodadad                          PRIOR

3/19/93 --     Deft with Atty Tracey Eadie. Sentencing  set for 5:00
               4/26/93 for Parvis Khodadad Parvis Khodadad (1) count(s) 2,
               1 oral argumen heard on defense motions. courts decision;
               Mandatory minumum jail sentence is appropriate as a minimum
               guideline. .deft conttinued remanded. (kr)
               [Entry date 03/22/93]

7/14/93 --     Pre-trial conference as to Parvis Khodadad held.  Deft. not
               pres.  Deft. atty. pres. Ray Sussman. Gov't pres by Katie
               Choo, AUSA, Ct. Rep. Bill Cohen.... Next PTC 10/29/93. Oral
               Argument on motion.  Deft's bail cont'd.  (Judge Sprizzo).
               (ys) [Entry date 07/16/93]

7/14/93 --     ORAL ORDER  as to Parvis Khodadad , set pretrial
               conference for 10/29/93 for Parvis Khodadad.   So
               Ordered: ( Entered by Judge John E. Sprizzo ) (ys)
               [Entry date 07/16/93]

9/1/93    6    MOTION by Parvis Khodadad to dismiss the indictment for
               lack of jurisdiction...., and to dismiss the indictment
               for lack of legal sufficiency, and to suppress any and
               all statements made by the defendant upon the grounds that
               any such statements were made in violation of the rights
               afforded the defendant by the Constitutions of the United
               States of America and State of New York , Return date not
               indicated. (ys) [Entry date 09/02/93]

9/30/93   7    MEMORANDUM by USA as to Parvis Khodadad  in opposition to
               [6-1] motion to dismiss the indictment for lack of
               jurisdiction...., [6-2] motion to dismiss the indictment
               for lack of legal sufficiency, [6-3] motion to suppress any
               and all statements made by the defendant upon the grounds
               that any such statements were made in violation of the
               rights afforded the defendant by the Constitutions of the
               United States of America and State of New York (ys)
               [Entry date 10/05/93]

10/28/93 --    Motion hearing as to Parvis Khodadad re:  Deft. pres.
               w/atty. Raymond Seissman, Gov't pres. by Katherine Choo,
               AUSA.  Farsi interp pres.  Ct. rep. Bill Cohen.  Hrg. held
               on deft's motions.  Court decision.  Deft's motions to
               suppress and dismiss denied deft's bail cont'd. Time
               excluded adj. to 2/22/94. (ys) [Entry date 10/29/93]

10/28/93 --    ORAL ORDER  as to Parvis Khodadad denying [6-1] motion to
               dismiss the indictment for lack of jurisdiction.... as to
               Parvis Khodadad (1), denying [6-2] motion to dismiss the
               indictment for lack of legal sufficiency as to Parvis
               Khodadad (1), denying [6-3] motion to suppress any and all
               statements made by the defendant upon the grounds that any
               such statements were made in violation of the rights
               afforded the defendant by the Constitutions of the United
               States of America and State of New York as to Parvis

Khodadad (1) ( Entered by Judge John E. Sprizzo ) (ys)

Docket as of December 31, 1994 0:08 am          Page 6

Proceedings include all events.                                    APPEAL
1:92cr488-1   USA v. Khodadad                              PRIOR

          [Entry date 10/29/93]

10/29/93 8      Stipulation in Order as to Parvis Khodadad,  reset Jury
                trial for 2/22/94 for Parvis Khodadad. So Ordered: (
                Signed by Judge John E. Sprizzo ); Copies mailed. (ys)
                [Entry date 10/29/93]

10/29/93 9      Proposed Examination of Jurors by USA  as to Parvis
                Khodadad (ys) [Entry date 10/29/93]

2/2/94   --     Pre-trial conference as to Parvis Khodadad held.  Deft. not
                pres. defense atty pres. by Ray Sussman, Gov't pres. by
                Katherine Choo, AUSA.  T.D. adj. to 5/23/94.  Time
                excluded.  Deft. bail cont'd (Sprizzo, J.) (ys)
                [Entry date 02/07/94]

3/11/94  --     Pre-trial conference  as to Parvis Khodadad held.  Deft.
                pres. by Atty. Ray Sussman, Gov't pres. by Katherine Choo,
                AUSA.  Deft. bail cont'd.  (Sprizzo, J.) (ys)
                [Entry date 03/14/94]

5/2/94    10       MOTION by Parvis Khodadad An Order, pursuant to the case
                   of U.S. vs. Luck, prohibiting the prosecutor from raising
                   the prior convictions of the defendant to the jury during
                   their direct case and during the defendant's case, both on
                   direct and cross-examination of the defendant, and An
                   Order requiring the government to turn over all scientific
                   reports to the defendant, if any., and An order requiring
                   the government to turn over all Brady material forthwith,
                   and An Order requiring the government to turn over all
                   Jencks Act materials, including all Giglio material, to
                   defense counsel at least 10 days prior trial, and An
                   Order requiring the government to indicate which foreign
                   documents, if any, it intends to offer in evidence upon
                   trial. , and An order requiring the government to
                   indicate how it authenticated the foreign documents to be
                   offered into evidence upon trial and to give the defendant
                   an opportunity to contest the authenticity of such
                   documents prior to trial. , and An Order requiring the
                   government to indicate all evidence it intends to offer
                   pursuant to Rule 404 and granting a hearing to determine if
                   this evidence is to be excluded pursuant to Rule 403., and
                   An order requiring the government to disclose if the
                   government possesses any additional discovery material that
                   it has not yet turned over to defense counsel, including,
                   without limitation, final translations of documents to be
                   offered in evidence, transcript of the 16 tapes provided to
                   defense counsel and written or oral agreements made with
                   Robert Ogle and any other witness scheduled to testify for
                   the government., and A motion, in limine, excluding all
                   evidence from prior cases in France and Germany on the
                   grounds that the defendant was deprived of many
                   Constitutional rights during those proceedings, including,
                   without limitation, rights to counsel, rights to due
                   process, the right to remain silent, the right to a jury
                   trial, the right to be indicated by a Grand Jury, and the
                   right to be present during trial, and An Order declaring
                   the defendant to be indigent and granting him the out of
                   court services of a translator and private investigator
                   pursuant to the Criminal Justice Act. , and An Order
                   granting a continuance of trial for a reasonable period of
                   time for the aforementioned translator and private
                   investigator to complete their work., and Rescheduling
                   the proposed deposition of Mohammad Ali Ghani in Amman,
                   Jordan, previously scheduled for the end of April, 1994 ,
                   Return date at a time and place to be set by the Court. (ys)
                   [Entry date 05/03/94]

5/4/94    --       Pre-trial conference as to Parvis Khodadad held. Deft.
                   pres. w/atty. Ray Sussman. Gov't pres. by Katherine Choo,
                   AUSA. Deft.'s motion to be considered indigent to be heard
                   at hearing 5/12/94 at 11:00 a.m. Deft's bail cont'd at
                   hearing. (Sprizzo J.) (ys) [Entry date 05/09/94]

---

5/4/94    --       ORAL ORDER as to Parvis Khodadad , set pretrial
                   conference for 11:00 5/12/94 for Parvis Khodadad (
                   Entered by Judge John E. Sprizzo ) (ys)
                   [Entry date 05/09/94]

5/5/94    11       TRANSCRIPT of record of proceedings as to Parvis Khodadad
                   for dates of 2/2/94. (ys) [Entry date 05/05/94]

5/20/94   12       Request to Charge by USA (ys) [Entry date 05/20/94]

5/20/94   13       Proposed Examination of Jurors by USA  as to Parvis
                   Khodadad (ys) [Entry date 05/20/94]

6/29/94   14       TRANSCRIPT of record of proceedings as to Parvis Khodadad
                   for dates of 3/11/94. (ys) [Entry date 06/29/94]

7/5/94    15       ORDER as to Parvis Khodadad, reset motion filing deadline
                   for 7/18/94 for Parvis Khodadad So Ordered: ( Signed by
                   Judge John E. Sprizzo ); Copies mailed. (ys)
                   [Entry date 07/05/94]

7/18/94   16       MOTION by Parvis Khodadad to extend time to file a motion
                   pursuant to Rule 29 and Rule 33 of the Federal Rules of
                   Criminal Procudure until such time as Robert Ogle produces
                   the jewelry he obtained from the defendant pursuant to a
                   cosignment agreement or granting an extension to a date
                   certain to be set by the Court, said motions having been
                   made within the 7 day period immediatley following the jury
                   verdict and the Court having renewed its extension, and
                   evidentiary hearing to determine if legally sufficient
                   newly discovered evidence exists to warrant the Court to
                   order a new trial in the interest of justice pursuant to
                   FRCP Rule 33 , and Only in the event the Court is legally
                   unable or unwilling to grant a further extension of the
                   defendant's Rule 29 and Rule 33 motions beyond July 18,
                   1994, the defendant requests that the Court grant him a
                   Judgment of Acquittal after trial pursuant to FRCP Rule 29
                   or, in the alternative, grant a new trial based on newly
                   discovered evidence pursuant to FRCP Rule 29 or, in the
                   alternative, grant a new trial based on newly discovered
                   evidence pursuant to FRCP Rule 33 at the present time ,
                   Return date not indicated. (ys) [Entry date 07/18/94]

7/28/94   17       TRANSCRIPT of record of proceedings as to Parvis Khodadad
                   for dates of 5/23,24,25,26,31, 1994. (ys)
                   [Entry date 07/28/94]

7/28/94   18       TRANSCRIPT of record of proceedings as to Parvis Khodadad
                   for dates of 6/1/2/3/1994. (ys) [Entry date 07/28/94]

Proceedings include all events.                                    APPEA:
1:92cr488-1   USA v. Khodadad                          PRIOR

8/8/94   19     MEMORANDUM by USA as to Parvis Khodadad  in opposition to
                [16-1] motion to extend time to file a motion pursuant to
                Rule 29 and Rule 33 of the Federal Rules of Criminal
                Procudure until such time as Robert Ogle produces the
                jewelry he obtained from the defendant pursuant to a
                cosignment agreement or granting an extension to a date
                certain to be set by the Court, said motions having been
                made within the 7 day period immediatley following the jury
                verdict and the Court having renewed its extension, [16-2]
                motion evidentiary hearing to determine if legally
                sufficient newly discovered evidence exists to warrant the
                Court to order a new trial in the interest of justice
                pursuant to FRCP Rule 33, [16-3] motion Only in the event
                the Court is legally unable or unwilling to grant a further
                extension of the defendant's Rule 29 and Rule 33 motions
                beyond July 18, 1994, the defendant requests that the Court
                grant him a Judgment of Acquittal after trial pursuant to
                FRCP Rule 29 or, in the alternative, grant a new trial
                based on newly discovered evidence pursuant to FRCP Rule 29
                or, in the alternative, grant a new trial based on newly
                discovered evidence pursuant to FRCP Rule 33 at the present
                time (ys) [Entry date 08/08/94]

8/24/94  20     TRANSCRIPT of record of proceedings as to Parvis Khodadad
                for dates of 5/19/94. (ys) [Entry date 08/25/94]

8/24/94  21  !  TRANSCRIPT of record of proceedings as to Parvis Khodadad
                for dates of 5/23/94. (ys) [Entry date 08/25/94]

8/24/94  22     TRANSCRIPT of record of proceedings as to Parvis Khodadad
                for dates of 5/4/94. (ys) [Entry date 08/25/94]

9/2/94   23      Filed Reply by Raymond S. Sussman. Parvis Khodadad as to
                Parvis Khodadad (dd) [Entry date 09/06/94]

9/7/94   24     Filed Reply by Parvis Khodadad re: requesting for oral
                argument on Rule 29 Motion.   (dkt and ret to chambers) (ys)
                [Entry date 09/07/94]

Docket as of December 31, 1994 0:08 am          Page 10

Proceedings include all events.                                    APPEAL
1:92cr488-1    USA v. Khodadad                            PRIOR

9/21/94  25      ORDER as to Parvis Khodadad denying [16-1] motion to extend
                 time to file a motion pursuant to Rule 29 and Rule 33 of
                 the Federal Rules of Criminal Procudure until such time as
                 Robert Ogle produces the jewelry he obtained from the
                 defendant pursuant to a cosignment agreement or granting an
                 extension to a date certain to be set by the Court, said
                 motions having been made within the 7 day period
                 immediatley following the jury verdict and the Court having
                 renewed its extension as to Parvis Khodadad (1), denying
                 [16-2] motion evidentiary hearing to determine if legally
                 sufficient newly discovered evidence exists to warrant the
                 Court to order a new trial in the interest of justice
                 pursuant to FRCP Rule 33 as to Parvis Khodadad (1), denying
                 [16-3] motion Only in the event the Court is legally unable
                 or unwilling to grant a further extension of the
                 defendant's Rule 29 and Rule 33 motions beyond July 18,
                 1994, the defendant requests that the Court grant him a
                 Judgment of Acquittal after trial pursuant to FRCP Rule 29
                 or, in the alternative, grant a new trial based on newly
                 discovered evidence pursuant to FRCP Rule 29 or, in the
                 alternative, grant a new trial based on. newly discovered
                 evidence pursuant to FRCP Rule 33 at the present time as
                 to Parvis Khodadad ()... That defedant's motions pursuant
                 to Rules 29 and 33 of Federal Rules of Criminal Procedure
                 shall be and hereby are denied. ( Signed by Judge John E.
                 Sprizzo ). (ys) [Entry date 09/21/94]

12/14/94  26     NOTICE OF APPEAL by Parvis Khodadad    Filing Fee $ 105
                 Receipt # 228926 as to judgment entered December 8, 1994.
                 Copies sent to US atty., court reporter, judge, USCA. (as)
                 [Entry date 12/16/94]

12/16/94  --     Notice of appeal and certified copy of docket to USCA:
                 [26-1] appeal  by Parvis Khodadad  ; Copy of notice of
                 appeal sent to District Judge. (as) [Entry date 12/16/94]

12/29/94  27     ORDER as to Parvis Khodadad that def. be permitted to
                 surrender on Janaury 2, 1995 to the United States Marshal
                 Service for the Norhtern Distict of California Federal
                 Correctional Facility designated of him by the Bureau of
                 prisons, for service of his sentenc. ( Signed by Judge John
                 E. Sprizzo ); Copies mailed. (dd) [Entry date 12/29/94]

[END OF DOCKET: 1:92cr488-1]

--------------------------------------------------------------------------------
Press <Return> or <Enter> to continue...

**A 12**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

        -v-                                 :        INDICTMENT

                                            :        92 Cr. 488
PARVIZ KHODADAD,
                                            :

                Defendant.                  :

- - - - - - - - - - - - - - - - - - x

COUNT ONE

The Grand Jury charges:

1.  Beginning at least on or about May 22, 1992 through
on or about May 27, 1992, in the Southern District of New York and
elsewhere, PARVIZ KHODADAD, the defendant, unlawfully, willfully,
and knowingly did transport, transmit and transfer in interstate
commerce, goods, wares and merchandise, of the value of $5,000 and
more, knowing the same to have been stolen, converted and taken by
fraud, to wit, one painting by Pieter Brueghel The Younger,
entitled "The Flemish Proverbs," worth approximately $1,000,000.

(Title 18, United States Code, Sections 2314 and 2.)

COUNT TWO

The Grand Jury further charges:

2.  Beginning at least on or about May 22, 1992 through
on or about May 27, 1992, in the Southern District of New York and
elsewhere, PARVIZ KHODADAD, the defendant, unlawfully, willfully
and knowingly did receive, possess, conceal, store and barter,

**A 13**

goods, wares and merchandise of the value of $5,000 and more, which had crossed a State and United States boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted and taken, to wit, one painting by Pieter Brueghel The Younger entitled "The Flemish Proverbs," worth approximately $1,000,000.

(Title 18, United States Code, Section 2315 and 2.)

_____
FOREPERSON

OTTO G. OBERMAIER
United States Attorney

---

AO 245 S (Rev. 4/90) Sheet 1 - Judgment in a Criminal Case

32452-054

# United States District Court

SOUTHERN    District of    NEW YORK

FILED
DEC 16 1994
S. D. OF N.Y.

. UNITED STATES OF AMERICA
v.
PARVIS KHODADAD

(Name of Defendant)

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:   92 CR 00488 01 (JES)

HOWARD SCHECTER ESQ.
Defendant's Attorney

AUSA KATHERINE CHOO

THE DEFENDANT:

☐ pleaded guilty to count(s) _____
☒ was found guilty on count(s)  1 and 2 _____ after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number |
|---|---|---|---|
| Title 18 USC 2314 & 2 | INTERSTATE TRANSPORT OF STOLEN PROPERTY | MAY 22, 1992 | 1 |
| Title 18 USC 2315 & 2 | RECEIPT OF STOLEN PROPERTY TRANSPORTED IN INTERSTATE COMMERCE | MAY 22, 1992 | 2 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____ and is discharged as to such count(s).
☐ Count(s) _____ (is)(are) dismissed on the motion of the United …
☒ It is ordered that the defendant shall pay a special assessment of $  100.00
1 and 2 _____, which shall be due ☒ immediately  ☐ as follows.

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this dist… 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and sc… assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:  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

Defendant's Date of Birth:  02/26/38

Defendant's Mailing Address:
859 Turrini Drive
Danville, CA., 94526

Defendant's Residence Address:
SAME

DECEMBER 8, 1994
Date of Imposition of Sentence

Signature of Judicial Officer

HON. JOHN E. SPRIZZO U.S.D.J.
Name & Title of Judicial Officer

DECEMBER 8, 1994
Date

A 14

A 15

AO 245 S (Rev. 4/90) Sheet 2 - Imprisonment

Defendant:      PARVIS KHODADAD
Case Number:    92 CR 00488 01 (JES)

Judgment—Page __2__ of __5__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of _____ FORTY ONE (41) MONTHS

☐X The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States marshal.
XX The defendant shall surrender to the United States marshal for this district.
    X at 12:00 NOON p.m. on JANUARY 2, 1995 .
    ☐ as notified by the United States marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
    ☐ before 2 p.m. on _____
    ☐ as notified by the United States marshal.
    ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

_____, with a certified copy of ''

**A 16**    United States Marshal

---

AO 245 S (Rev. 4/90) Sheet 3 - Supervised Release

Defendant:      PARVIS KHODADAD
Case Number:    92 CR 00488 01 (JES)

Judgment—Page __3__ of __5__

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____
THREE (3) YEARS

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance. The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☐ The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

X The defendant shall not possess a firearm or destructive device.
    The defendant must maintain regular payments toward the fine imposed should it not be paid in full upon his release from imprisonment

The defendant shall cooperate with the Immigration and Naturalization Service

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime. In addition:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**A 17**

AO 245 S (Rev. 4/90) Sheet 5 - Fine

Defendant:      PARVIS KHODADAD
Case Number:   92 CR 00488 01 (JES)                    Judgment—Page __4__ of __5__

## FINE

The defendant shall pay a fine of $ 10,000.00 _____. The fine includes any costs of incarceration an
or supervision.

☐ This amount is the total of the fines imposed on individual counts, as follows:

COUNTS 1 and 2

☐ The court has determined that the defendant does not have the ability to pay interest. It is ordered that

☐ The interest requirement is waived.
☐ The interest requirement is modified as follows:

This fine plus any interest required shall be paid:
☐ in full immediately.
☐ in full not later than _____
☐ in equal monthly installments over a period of _____ months. The first payment is due on the
     date of this judgment. Subsequent payments are due monthly thereafter.
☒ in installments according to the following schedule of payments:
     ON A SCHEDULE TO BE DETERMINED AND MONITORED BY THE PROBATION DEPARTMENT

If the fine is not paid, the court may sentence the defendant to any sentence which might have been
originally imposed. See 18 U.S.C. § 3614.   **A 18**

---

AO 245 S (Rev. 4/90) Sheet 7 - Statement of reasons

Defendant:      PARVIS KHODADAD
Case Number:   92 CR 00488 01 (JES)                    Judgment—Page __5__ of __5__

## STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

OR

☐ The court adopts the factual findings and guideline application in the presentence report except
    (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level: _____20_____

Criminal History Category: _____II_____

Imprisonment Range: __37__ to __46__ months

Supervised Release Range: __2__ to __3__ years

Fine Range: $ 7,500.00 to $ 75,000.00

☐ Fine is waived or is below the guideline range, because of the defendant's inability to pay

Restitution: $ _____

☐ Full restitution is not ordered for the following reason(s):

☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no
    reason to depart from the sentence called for by application of the guidelines.

OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imp
    for the following reason(s):

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following reason(s):

**A 19**

Pages A.20-41, constituting the PSR and Guidelines worksheet, are redacted.

P4c8mkoda

1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                    92 Cr 488 JES

5   PARVIS KHODADAD,

6                  Defendant.

7   ------------------------------x

8                                    December 8, 1994
                                     1:30 p.m.
9
    Before:
10
                  HON. JOHN E. SPRIZZO,
11
                                     District Judge
12
                      APPEARANCES
13
    MARY JO WHITE,
14      United States Attorney for the
        Southern District of New York
15  KATHERINE M. CHOO,
        Assistant United States Attorney
16
    HOWARD SCHECHTER,
17      Attorney for Defendant

18

19

20

21

22

23

24

25

---

P4c8mkoda

2

1              THE COURT:  Does the government have anything to

2   say?

3              MS. CHOO:  No, your Honor.

4              THE COURT:  Have I have ruled on the motions?  Is

5   there a motion for a new trial here?

6              MS. CHOO:  There was a motion, your Honor.  You

7   denied it.

8              THE COURT:  Go ahead.

9              MR. SCHECHTER:  Your Honor, the defendant would

10  respectfully request the court to depart downward from the

11  guidelines in this matter.

12             THE COURT:  For what reason?

13             MR. SCHECHTER:  I am about to say.  For several

14  different reasons --

15             THE COURT:  First, you had a few objections that

16  you have to resolve first.  Take it in any order you want.

17  Logically you are right.  We should deal with the downward

18  departure first, because if I downwardly depart, these

19  objections are irrelevant.  So I guess logically you are

20  correct.

21             MR. SCHECHTER:  Also I'd like to point out to the

22  court that it had been the intention of the defendant to

23  submit this morning to the court a report from a

24  psychologist who is treating the defendant for the past 3

25  years.  Her name is Dr. Parris, Mary Jean Parris.  There is

P4c8mkoda

3

1    in the original bail hearing at the time of arraignment

2    there is reference to her.  She made a report to the court

3    at that time.  She has been seeing the defendant ever since,

4    consulting with him through an interpreter.

5            And unfortunately, Ms. Parris, Dr. Parris, has

6    pneumonia at this time, which is complicated by an earlier

7    physical condition, which makes her extremely susceptible to

8    infection.  Although it had been my intention to produce her

9    this afternoon, or at least to have a report, I have been

10   unable to secure either of those.

11           THE COURT:  I know.  But this case was tried in

12   May.  It's now December.

13           MR. SCHECHTER:  I understand.  But I wanted the

14   report to be as full as possible.  I didn't secure a report

15   from Dr. Parris --

16           THE COURT:  Tell me what she would say.

17           MR. SCHECHTER:  Thank you, your Honor.

18   Dr. Parris has told me over the telephone, both at the

19   beginning of the case and at different points through the

20   case.  She did not evaluate him between approximately a year

21   ago and the most recent evaluation of about 2 to 3 months

22   ago.  So for about a 9 to 12 month period there was no

23   evaluation.  There was treatment during the first year or 15

24   months of the case.  There is a gap of treatment and then

25   she saw him again two or three months ago.

SOUTHERN DISTRICT REPORTERS (212) 791-1020
EUGENE A. LEVINE
A 44

P4c8mkoda

4

1            She indicates to me that the defendant is an

2    immature individual who reacts immaturely to situations, not

3    because of a predisposition to do so, but because in her

4    opinion of the stress and the trauma that he went through

5    during and immediately prior to the Iranian revolution and

6    to the events which took place after the Iranian revolution.

7            She lays particular stress on the 2 misdemeanors

8    which are also included in the probation report which is

9    before your Honor in afternoon, and in the history of those

10   events, where the defendant would take a very large item,

11   hold it up over his head as he was walking out of the store,

12   and walk very slowly through the main door, and then, when

13   challenged, start to run.

14           Both she and I have both spoken to him about

15   these events because they were of course very relevant to

16   the issue of bail at the time he was arrested, and I

17   remember him saying specifically to me on the day of the

18   arrest, he was in tears and he said to me that he was a

19   worthless individual, that he had been unable to protect his

20   family or to provide for them.  And that I for one should

21   know how worthless he was.  This somehow connected in his

22   mind with why it is that he on 3 occasions, one of which has

23   been expunged, engaged in the same course of conduct --

24           THE COURT:  Why were they expunged?

25           MR. SCHECHTER:  Your Honor, the law of

SOUTHERN DISTRICT REPORTERS (212) 791-1020
EUGENE A. LEVINE
A 45

1    California, Sections 1302 points 3 and 4 of the Penal Code

2    in relation to both felonies and misdemeanors contains a

3    provision saying that it is in the discretion of the judge

4    if probation is successfully completed, to allow the

5    defendant to withdraw his plea of guilty, plead not guilty

6    and the court then sua sponte dismisses the charge and

7    enters upon the record the disposition that the case has

8    been dismissed.

9         THE COURT:  Were these cases dismissed?

10        MR. SCHECHTER:  One of these them was.

11        THE COURT:  Do they form part of a criminal

12   history?  If they are expunged I can't rely on them.  Does

13   the government agree they were expunged?

14        MR. SCHECHTER:  One was, your Honor.

15        MS. CHOO:  The government is only aware of 2

16   convictions, none of which has been expunged.  I spoke to

17   someone from Contra Costa County, I spoke to the county

18   Probation Officer who told me that they are against the

19   grant of the application because in this case, the offense

20   was committed while the defendant was serving a probationary

21   sentence on that case, and therefore they are recommending

22   that --

23        THE COURT:  But as of this moment in time they

24   have not been expunged.

25        MS. CHOO:  Exactly.

1         MR. SCHECHTER:  As to those that have not been

2    expunged.

3         THE COURT:  Those are the only 2 I saw.

4         MR. SCHECHTER:  There are 3 that were listed in

5    the original bail argument in San Francisco, and no one

6    wants to sandbag your Honor by attempting to hide it.  I

7    feel that those would be expunged within the next week or 2

8    because no one has been -- unfortunately, I have not been

9    retained to do this --

10        THE COURT:  I know, but the pattern has been

11   throughout.  Everybody waits for the last minute to do

12   things, and this is not the first experience I have had with

13   this.  We have had 7 months between conviction and

14   sentencing, which is more than enough time to do whatever he

15   had to do in terms of sentencing.

16        MR. SCHECHTER:  I couldn't agree with you more.

17   I can only say in mitigation of that, that it is indeed a

18   sad occasion that I had no authority to proceed --

19        THE COURT:  I'm not blaming you, but that is a

20   pattern throughout.

21        MR. SCHECHTER:  It has a great deal to do with

22   the situation regarding the defendant's mental state, to

23   which you have begun to allude.  As I said, I had no

24   authority to proceed.  I have recommended from the day that

25   we were -- that these expungements be done from the day of

1   the conviction.

2          THE COURT:  What would be the guideline range

3   with or without those, assuming that those 2 convictions

4   were expunged, what would be the guideline range?

5          MR. SCHECHTER:  Only one of them need to be

6   expunged in order to make him down from a criminal history

7   category of 2 to 1.

8          THE COURT:  What's the guideline range if that is

9   done, does the government know?  I just want to see if it's

10  academic.

11         MR. SCHECHTER:  No, it's not academic.

12         THE COURT:  It may be.

13     '   MS. CHOO:  At a level 20, and a criminal history

14  category of one would be 33 to 41 months.

15         THE COURT:  Unless I sentence him to the upper

16  end of the guideline range it would be academic.

17         MR. SCHECHTER:  Except that the court should

18  operate within the correct framework of the guidelines

19  because it might give him the benefit if this expunged.

20         THE COURT:  That would only apply if I were to

21  sentence him at the lower end of the guideline, which I'm

22  not going to do.  Where there are overlapping sentences, for

23  example.  In any event, I don't think it makes a' difference,

24  because if it turns out that the sentence were expunged I

25  would have jurisdiction assuming there were not an

1   overlapping sentence imposed, to reduce the sentence on the

2   theory of the reduced guidelines.  If that was expunged nunc

3   pro tunc, to speak, I don't think I would lack jurisdiction

4   to reduce the sentence under the application under 2255.

5          In any event, if the sentences overlap, it

6   doesn't make any difference.

7          MR. SCHECHTER:  I understand.  I just wanted to

8   say to your Honor for the record that of course the reason

9   that the probation department of Contra Costa County, after

10  Ms. Choo's phone call decided to recommend against the

11  expungement is because they assumed that the substantial

12  part of the criminal conduct alleged in this case occurred

13  in 1993, and 1992, and not in 1979 and '78.

14         THE COURT:  The argument you made at trial is

15  that I should ignore anything that happened before because

16  the offense was committed when it was transported and not

17  above.

18         MR. SCHECHTER:  I have been in contact with

19  people there and they told me that if they understood that

20  this property had been stolen in Iran by someone during the

21  late '70s or 1980s, they would have a different -- and was

22  transported across the state lines in the 1990, they would

23  have perhaps a very different view.

24         THE COURT:  The gist of the offense of which he

25  was convicted was causing the transportation of the stolen

P4c8mkoda

9

1   property whenever stolen.  That occurred in 1993.

2         MR. SCHECHTER:  I understand.  I am conveying to

3   you my sentiment that that would not be the overwhelming

4   consideration in the mind of a municipal court judge in

5   Contra Costa, California.

6         THE COURT:  It would be to me, I will tell you

7   that much.  If I were dealing, if this was my case I'd

8   certainly regard the transportation of a stolen painting

9   across state lines as not necessarily --

10        MR. SCHECHTER:  A criminal conviction does not

11  necessarily disable --

12        THE COURT:  No, it's the criminal conduct.

13        MR. SCHECHTER:  That does not necessarily disable

14  you from the remedy of expungement.

15        THE COURT:  Until they do, I don't think they are

16  going to, but I will see what sentence I impose and we'll

17  see whether it makes a difference.  I must say, your

18  arguments for downward departure are not convincing.

19        MR. SCHECHTER:  I haven't begun them yet.

20        THE COURT:  I have the factual records in this

21  case which shows a rather sophisticated individual who was

22  maintaining a very tight control over this painting and

23  bringing it around to different places and wanting to be

24  sure that he was kept in control of everything, knew what

25  was going on.

P4c8mkoda

10

1         One of the arguments made here is that Ogle

2   didn't keep him apprised of what was going on.  This is not

3   an immature individual, this is an intelligent criminal.  I

4   surely don't think that falls within the kind of mental

5   disorder which would entitle him to a downward departure, as

6   I understand the cases in this circuit.

7         MR. SCHECHTER:  Judge, most of the conduct -- I'm

8   not going to rehash any of the facts that came out at trial

9   because I know your Honor paid very close attention to them.

10  I would say that in my opinion nothing which came out at the

11  trial shows this defendant to be currently or within the

12  last few years to be any sort of sophisticated individual.

13        Although his lawyers my may make an argument to a

14  jury -- this defendant never testified -- that he was not

15  apprised or appraised or some things, doesn't mean that he

16  was apprised of these things that he would react to them in

17  a mature and deliberate manner.

18        THE COURT:  I certainly don't see any mental

19  problem that would be so significant that it would result in

20  an impact of his capacity to warrant a downward departure.

21        MR. SCHECHTER:  That it is why I think it

22  regrettable --

23        THE COURT:  If she came in and said exactly what

24  you said she said, that wouldn't qualify for a downward

25  departure.

P4c8mkoda

11

1        MR. SCHECHTER:  I haven't finished that she said.

2   I will finish my double hearsay.  My understanding is that

3   what she says is that he reacts as if he were an extremely

4   immature child, that he has been shattered by events which

5   took place in France and in Iran.

6        There was an attempted assassination in France, a

7   number of other shattering events which took place.  And

8   that in her opinion he has never sufficiently recovered from

9   that.  To this I would add my own humble opinion, having

10   known the defendant for 2 and a half years now, and having

11   had extensive contacts with them, I would say that probably

12   had -- I don't think it would be an exaggeration to say I

13   have had at least three or four hundred conversations with

14   him., And I can tell you that the same factors that she

15   observes are factors that I observed.  He has a great deal

16   of difficulty processing the nature of his situation.

17        THE COURT:  That doesn't stand for anything.

18        MR. SCHECHTER:  What I mean is understanding

19   exactly what his situation is.  He reacts to suggestions in

20   a highly emotional way, which are not necessarily related to

21   their factual merit; he becomes depressed and lapses into

22   silence, from which it's difficult to get him to depart.

23   Sometimes this can go on for half an hour at a time.

24        THE COURT:  Do you want me to ignore the trial

25   record in this case and leave aside the trauma of the

P4c8mkoda

12

1   Iranian revolution?  The trauma of the revolution did not

2   prevent him from taking and secreting and resisting

3   disclosure of and lying about where the property was, as

4   well as litigating over it, and going to French courts and

5   failing to appear -- this is hardly the conduct of a person

6   that is so traumatized.  If he had really been traumatized,

7   he would have said all right, Mr. Kalantari, here is your

8   painting back.  That is not what he did.

9        MR. SCHECHTER:  No one has tried to secure in

10   this case two points for assumption of responsibility.  The

11   defendant didn't take the stand in this case, but it has

12   remained -- first of all, as far as the incident in France

13   is concerned and the reason why he didn't appear in court,

14   and I am willing to call the defendant --

15        THE COURT:  I made a ruling that says the

16   conviction couldn't be used against him.  The only point I

17   will make is if the point that the psychologist is making

18   that he is traumatized by the revolution in 1979, his whole

19   pattern of conduct since then is inconsistent with a man who

20   is suffering from trauma.  It's a man who is suffering from

21   greed.  That is the picture that emerges.  He took the

22   French property and didn't return it.

23        MR. SCHECHTER:  That is an impression that I am

24   trying with my remarks --

25        THE COURT:  If I believed the trial testimony,

P4c8mkoda

13

1    which for purposes of the sentencing I do, if I believe

2    Mr. Kalantari's testimony, which I do, having seen him at

3    trial, this is a man who betrayed one of his friends, who

4    was highly intelligent in the way he did it, and when

5    Mr. Kalantari pursued his property, wasn't traumatized, he

6    said it was stolen from me.  It's hardly supportive of some

7    theory of mental aberration; and when he gets arrested in

8    this case, makes a motion, sends his son to front the

9    motion.  That is this is not an immature individual, it's a

10   man who tries in whatever way he can to get out of it.

11          MR. SCHECHTER:  First of all, your Honor, my

12   understanding of the situation as it happened in France is

13   that the defendant did not appear at the court in France

14   because of death threats against him and because there was a

15   material corroboration of those threats.  But I am urging

16   upon the court that the court's power to depart downward if

17   it chooses to do so is not necessarily related to the

18   defendant's mental state at the time of commission of the

19   events, certainly in the 1970s and 1980s --

20          THE COURT:  I am only referring to that because

21   your psychologist says the course of his traumatization goes

22   back to the Iranian revolution in 1979.  I am only

23   responding to the suggestion, the reason why I have gone

24   back to that time frame is because there is a suggestion

25   that sometime since the revolution he suffered from some

P4c8mkoda

14

1    kind of mental trauma, and I am saying his behavior is not

2    consistent with that.

3          I don't know of any case in this Circuit which

4    sustained a downward departure, nor would I give a downward

5    departure as a matter of discretion on facts such as these,

6    because what I am confronted with is ordinary depression and

7    anxiety, and if you will, unhappiness and melancholy that is

8    normally associated with a criminal conviction.

9          That being so, there are no extraordinary

10   circumstances to justify a downward departure either as a

11   matter of law or discretion, and therefore I decline to

12   depart downward.  Go ahead.

13          MR. SCHECHTER:  May I apply for other grounds?

14          THE COURT:  In addition to the mental state?

15          MR. SCHECHTER:  Yes, sir.

16          THE COURT:  I will give you 5 more minutes.  I

17   can't be here all day listening though these arguments.

18   Make the best arguments you have.

19          MR. SCHECHTER:  I will, your Honor.  I would also

20   cite to the court as grounds for downward departure an

21   extraordinary family situation.

22          THE COURT:  What's so extraordinary about his

23   family situation that I don't face in every criminal case?

24          MR. SCHECHTER:  Your Honor, there is a case that

25   I was going to cite to the court, which talks about how a

P4c8mkoda

15

1  number of factors when accumulated together, each one of

2  which is not significant to justify downward departure in

3  and of itself --

4          THE COURT:  I know the case law.  The bottom line

5  on a downward departure is, what makes his case so different

6  taking one factor or all of the factors than that facing

7  every criminal defendant I sentence in this court every day

8  and one of whom I am going to be sentencing in about 15

9  minutes?  Many of them come from much worse backgrounds with

10  much greater opportunity for criminal conduct, with much

11  worse background, with families, dependents, with drug

12  addiction problems -- what makes him a candidate for

13  downward departure when all of them are not?

14          MR. SCHECHTER:  To sum it up, I would say there

15  is a combination of factors that arises partially from a

16  mental condition or aberration which I am not evidently

17  competent to articulate --

18          THE COURT:  You are doing very well.  If the

19  psychiatrist told me exactly what you told me and she told

20  me that he was immature and traumatized and depressed and

21  melancholy, none of that would justify downward departure.

22  I have declined downward departure in other cases where the

23  showing of mental impairment was stronger, but certainly not

24  strong enough to justify any kind of downward departure.

25          MR. SCHECHTER:  I cannot take upon myself to know

SOUTHERN DISTRICT REPORTERS (212) 791-1020
EUGENE A. LEVINE

A 56

P4c8mkoda

16

1  exactly what she had or --

2          THE COURT:  The problem is it was not submitted

3  to me timely.  We have had 7 months from the time of

4  conviction to the time of sentencing and at some point in

5  time this case has to find its way to the Second Circuit

6  Court of Appeals, which is why I am normally generous with

7  adjournment.

8          But given the time parameters I have afforded

9  you, I am not inclined to depart downward on the basis of

10  mental condition when I see no evidence that would

11  distinguish him from the ordinary defendant, and if he is

12  upset or depressed or melancholy about this case, quite

13  frankly, I'm not surprised.  I would be too if I was in his

14  spot.

15          MR. SCHECHTER:  If your Honor would give me 2 of

16  those 5 minutes, I would articulate the ground.

17          THE COURT:  You can take the 5.  But there has to

18  be an end to this.

19          MR. SCHECHTER:  I think the court has been

20  generous in the adjournments that it has granted, and I

21  think particularly, understanding my personal situation,

22  that I have been at Oxford University since the end of the

23  summer --

24          THE COURT:  7 months is a long time between

25  conviction and sentencing.

SOUTHERN DISTRICT REPORTERS (212) 791-1020
EUGENE A. LEVINE

A 57

P4c8mkoda

17

1        MR. SCHECHTER:  I understand.  The court has
2   taken that into consideration.  The court has been generous,
3   in fact.  I think the United States Attorney as well.  In
4   any event, I was saying that to me there is a totality of
5   circumstances which arises from the mental condition we
6   discussed, from the defendant's physical condition, related
7   to his heart condition, from the family's natural
8   apprehension as to his fate in a custodial environment that
9   arises from his physical and mental condition; from the fact
10  that he has a 13 year old daughter who is dependent upon
11  him, and that there is an instability in the spouse as well,
12  which renders that child's condition more vulnerable as
13  well; and because it's also the defendant's position that
14  under United States V Fairless, a downward departure would
15  also be justified in that this would be a single act of
16  aberrant behavior.
17        THE COURT:  Well, that is certainly not true.
18        MR. SCHECHTER:  The case law seems to support the
19  idea that even where the transaction is complex and involves
20  sophistication, with a whole series of transactions and
21  events regarding the given matter is unique in the life of
22  an individual --
23        THE COURT:  He has 2 convictions since he's been
24  here.
25        MR. SCHECHTER:  Your Honor, for different kind of

P4c8mkoda

18

1   offenses.
2        THE COURT:  It's certainly not aberrant conduct.
3   He's been convicted of shop lifting twice since he was in
4   the United States.  I wasn't even aware of that at the time
5   of trial.
6        MR. SCHECHTER:  Yes, your Honor, you were because
7   you ruled on our motions and I know how carefully your Honor
8   considers all the facts.  There was a motion under 404 to --
9        THE COURT:  You may be right but I have forgotten
10  it.  But the fact of the matter -- it started to become a
11  pattern in his case.  They may be different convictions but
12  it's the same type of thing, theft.  Correct?
13        MR. SCHECHTER:  But dramatically different kinds.
14        THE COURT:  I know that.
15        MR. SCHECHTER:  As your Honor knows --
16        THE COURT:  I know you are doing your best, but
17  the facts aren't there.
18        MR. SCHECHTER:  As your Honor knows, we have both
19  been practicing a lot of criminal law for more decades than
20  I like to talk about, and I have seen many defendants who
21  develop a habit of shoplifting under mental stress
22  situations ranging from a cardiologist's wife's to a 16 year
23  old, and a compulsive pattern of petty theft emerges,
24  especially when an individual is highly stressed.
25        It's my opinion that this defendant, that this

1    conduct was a single act of aberrant behavior, that under

2    the stress of all the events which have been described --

3         THE COURT:  Which came first, the shoplifting or

4    the transportation of the paintings?

5         MR. SCHECHTER:  The shoplifting.

6         THE COURT:  First we have the shoplifting, when

7    they have the effort to sell a million dollar painting to a

8    government agent, and this is 14 years after the so-called

9    initial theft took place, which if I were to argue the

10   aberrant behavior, you might say the aberrant behavior

11   begins with the theft from his friend in 1979, if you

12   believe the evidence in this case.

13        14 years thereafter, he is convicted for

14   shoplifting twice and then he tries to sell the painting.

15   Hardly aberrant.  That is not persuasive.

16        MR. SCHECHTER:  I don't believe that he was

17   purely and maturely able to deliberate on his acts at the

18   time.

19        THE COURT:  This is a man who was in business in

20   Iran.  This is not an unlettered, uneducated person.  He was

21   In with the cream of society in Iran.  He was a successful

22   businessman in Iran.  He had political connections in Iran.

23   This is not some person without sophistication.

24        I wish you wouldn't waste my time with those

25   arguments.  Get to your next factor.

1         MR. SCHECHTER:  I was going to say 20 years ago I

2    was able to play football in college but I don't do it very

3    well today.

4         THE COURT:  But he was trying to sell a million

5    dollars painting to an undercover agent in 1993.  That is a

6    year ago.

7         MR. SCHECHTER:  I don't believe he personally --

8         THE COURT:  The evidence certainly supports that

9    inference.  I found the evidence credible.

10        MR. SCHECHTER:  I am finished with the remarks in

11   this regard.  I believe there is a combination of factors

12   including Fairless, including his mental condition,

13   including his physical condition, including his minor

14   children and my personal observation is, whether it seems

15   credible or not, my personal observation of this man over a

16   period of 2 years is that he does not function rationally in

17   making economic and other decisions.

18        He doesn't, and I can say that to my mind beyond

19   the slightest shadow of doubt, that factor has complicated

20   my task to a degree that is difficult to convey adequately.

21        THE COURT:  I find that none of those factors

22   either alone or in combination justify a downward departure

23   as a matter of discretion and I don't think even as a matter

24   of law, but that is not the basis for my finding.

25        I decline to depart downward as a matter of

1  discretion because I don't think the authorities in this

2  court give me authority to do that, but I don't know whether

3  any court has done this, and been affirmed, in any event.

4  Whether or not I would be affirmed by the Second Circuit I

5  don't believe that the facts in this case warrant a downward

6  departure.

7         This man is capable of making very rational

8  business judgments, taking 5 to 10 million dollars from his

9  friend's property including very precious rugs, a million

10 dollar Breugels painting, an original painting is hardly

11 consistent with a man who doesn't make rational decisions.

12         Let's get to the other issues.

13         MR. SCHECHTER:  Your Honor, may I ask as a point

14 of courtesy, would you allow me to be seated during part of

15 my argument.  I have a fractured hip --

16         THE COURT:  Go ahead.  What about the value.  You

17 object to the 5 to 10 million dollars.  That seems to be

18 well supported by the evidence.

19         MR. SCHECHTER:  Your Honor, I'd like to cite to

20 the court a case which is not in this circuit, but which I

21 think is relevant on this issue.  The name of that case is

22 it Restrepo.

23         THE COURT:  I know Restrepo.

24         MR. SCHECHTER:  In my opinion, the standard

25 raised in Restrepo of a special kind of preponderance of the

1  evidence before relevant conduct can be considered has not

2  been met by the government in this case.

3         THE COURT:  The problem you have had, the

4  evidence, if believed, shows that all this property was

5  taken at one time.  It's obviously relevant conduct.  Part

6  of the same criminal conduct.  The jury found him guilty of

7  the painting and I can tell you on this evidence I would

8  have found beyond a reasonable doubt that he had taken not

9  only the paintings but the rugs as part of the same criminal

10 conduct.

11         MR. SCHECHTER:  I don't think the jury did.

12         THE COURT:  The jury didn't, but I am saying I

13 would based upon what I heard at trial, and I do for

14 purposes of this sentencing, find that the theft of the

15 painting and the theft of the rug was part of the same

16 criminal conduct and therefore clearly constitutes relevant

17 conduct but by not only a preponderance of the evidence, but

18 were I to apply a reasonable doubt standard I would find for

19 the record for purposes of this sentencing that it's

20 relevant conduct and I find that the value of the property

21 taken is well supported by the evidence; and I certainly so

22 find that by a preponderance of the evidence and I would

23 find beyond a reasonable doubt, just so there is no question

24 about the standard that you may argue is applicable here and

25 elsewhere, were the standard reasonable doubt -- it's not --

1  but were the standard reasonable doubt based on what I saw
2  and heard at trial, I would find no reasonable doubt, and I
3  would find for purposes of the evidence, but not only by
4  preponderance of the evidence and by clear and convincing
5  evidence, and if needed, beyond a reasonable doubt, so we
6  don't have to bother the Court of Appeals, I find that to be
7  established.
8          What other objections do you have?
9          MR. SCHECHTER:  Your Honor, I would respectfully
10 point out, the standard in Restrepo I feel is qualitative
11 not quantitative --
12         THE COURT:  By whatever standard you choose to
13 apply -- I don't want to keep repeating -- the evidence I
14 heard had such persuasive force both in terms of the number
15 of witnesses and the qualitative probative force of those
16 witnesses as to be sufficient to sustain a finding of
17 relevant conduct and evaluations used by any standard,
18 reasonable doubt, clear and convincing, and preponderance.
19 Can I make it any clearer than that?
20         MR. SCHECHTER:  No, sir.
21         THE COURT:  Take it to the Court of Appeals next.
22 What other objections do you have?
23         MR. SCHECHTER:  The defendant has never been
24 given an adequate opportunity to contest the value of the
25 articles.

1          THE COURT:  He had the opportunity at trial.
2          MR. SCHECHTER:  That was not an issue at trial.
3          THE COURT:  I heard testimony at the trial.  You
4  cross-examined at the trial --
5          MR. SCHECHTER:  There are a number of collateral
6  issues.
7          THE COURT:  All right.  Do you want a hearing?  I
8  will let your client testify, but bear in mind, there is at
9  present no enhancement for obstruction of justice.  If your
10 client wants to testify, that game is open.
11         MR. SCHECHTER:  Is that the only avenue?
12         THE COURT:  You want to put in evidence of
13 valuation --
14         MR. SCHECHTER:  Does it have to come from his
15 mouth?
16         THE COURT:  You could have made a request for
17 hearing long before now.  Why didn't you?  You see I am
18 getting impatient with you.  You have had 7 months.  There's
19 been no request for a hearing, but I will give you one on
20 the issue of valuation if you want one.  But bear in mind
21 there is a down side to that.
22         MR. SCHECHTER:  You mean if the defendant
23 testifies.
24         THE COURT:  If he testifies or puts on evidence
25 which I find to be fabricated.

1    MR. SCHECHTER:  I would also like --

2    THE COURT:  You can have your hearing on that

3  issue Monday.

4    MR. SCHECHTER:  Thank you.

5    THE COURT:  Stay here for the weekend, we will

6  have the hearing on Monday.  Bring in your witnesses.  What

7  other objections do you have on the sentencing?

8    MR. SCHECHTER:  I did want to also say to the

9  court that I don't think it fair or right to hold against

10  the defendant in any context at all the fact that his

11  lawyers decided to present a motion directed to his

12  confession.  The defendant didn't testify and --

13    THE COURT:  I am not holding it against him.

14  What I am saying to you is he allowed his son to testify.

15  What I said was, and I said it at the time of the hearing,

16  he put his son on to testify and --

17    MR. SCHECHTER:  I put the son on to testify, he

18  didn't.

19    THE COURT:  He could have said no, all right?

20    MR. SCHECHTER:  That is speculative, Judge.

21    THE COURT:  In any event, that is not part of the

22  sentencing.  If you want a hearing on valuation, bring in

23  all the proof you have Monday ac 11:00.

24    MR. SCHECHTER:  May I consult for a moment with

25  the defendant?

1    THE COURT:  If you don't want a hearing you can

2  let me know.  But if you want one, we are not going to delay

3  his sentence for a protracted period of time, and I am going

4  to remand him pending the hearing so he doesn't have to go

5  back to California.

6    MR. SCHECHTER:  I withdraw any request for

7  hearing.

8    THE COURT:  Discuss it with your client first

9  because he is going to accuse you of violation if you don't

10  discuss it with him.

11    MR. SCHECHTER:  May I have a moment to discuss it

12  with him?

13    THE COURT:  Yes.  I will take my sentence next in

14  the robing room.

15    (Recess)

16    MR. SCHECHTER:  Your Honor, the defendant

17  declines to present evidence at a hearing.  First of all, he

18  has no personal knowledge as to or recollection as to the

19  value of those particular items.  The defendant contents

20  himself with the observation that he doesn't feel it's his

21  burden of proof in this matter and that --

22    THE COURT:  It's not?

23    MR. SCHECHTER:  I don't believe it is.  And that

24  we don't feel that the record at trial sufficiently makes

25  out by clear and convincing or preponderance or any standard

P4c8mkoda

27

1    of evidence whatsoever --

2              THE COURT:  Then I will let the government

3    refresh my recollection as to what the evidence was.

4              MR. SCHECHTER:  May I just finish what I am

5    saying?

6              THE COURT:  Yes.

7              MR. SCHECHTER:  Any value which would have been

8    testified at trial would have been the value of goods as

9    they were in 1979 and 1980.  Second of all, there was no

10   adjustment for currency valuation.  I don't think it's

11   speculative to point out that the value of the Iranian rial

12   is subject to dramatic fluctuations depending on the current

13   state of relations between the government of Iran and the

14   United States.

15             All in all, I would just say that it's the

16   defendant's contention that this matter was never proved at

17   trial and that it's the government's burden at this time,

18   not ours.

19             THE COURT:  Then I will have the government tell

20   me what the trial proof was.

21             MS. CHOO:  Mr. Kalantari was asked about the

22   value of the property by Mr. Schechter on cross.  He said

23   that at the time it was stolen from him it was worth 5 to 10

24   million dollars.  Mr. Schechter also questioned him about

25   testimony he had given in the English proceeding in the late

P4c8mkoda

28

1    '80s about the value of the carpets alone, leaving all the

2    other valuables such as the painting aside, in which he

3    testified that it was worth 10 million dollars.

4              THE COURT:  I think he testified that some of

5    these rugs were worth $35,000, $40,000 each, didn't he?

6              MS. CHOO:  I don't remember testimony about

7    individual rugs, your Honor.

8              THE COURT:  I remember testimony about $35,000

9    $40,000 for an individual rug.  How many rugs were taken?

10             MS. CHOO:  About 290 rugs, your Honor.

11             THE COURT:  I find it more than sufficient to

12   persuade, and I adhere to my previous ruling, that value was

13   established at the trial.  You could take it to the Court of

14   Appeals.

15             MR. SCHECHTER:  I suppose I can take anything to

16   the Court Appeals --

17             THE COURT:  No, you have to have a finding from

18   me.  If you have evidence that you want to put in, but I

19   take it you do not.

20             MR. SCHECHTER:  At this moment I don't.  I have

21   no further arguments on this objection.

22             THE COURT:  I will accept the valuation that the

23   guideline ranges as set forth in the presentence report.

24             MR. SCHECHTER:  The presentence report does not

25   disclose the basis, it says according to information

1    available to the government but has not shared the source of

2    that information with the court.

3          THE COURT:  I am relying on the trial record.

4    The trial record is sufficient to establish value, and I do

5    recall the testimony of Mr. Kalantari; I found it credible

6    and persuasive and supported by the nature of the property

7    taken -- I do believe there was testimony in the record

8    about any one of these rugs being worth anywhere from

9    $40,000 and there were a large number of them taken; and the

10   evidence seems to be well supported by the record.  If not,

11   the Court of Appeals will vacate that finding.

12         The only other objection you had was that it was

13   inappropriate to regard it as crime being committed on

14   probation.  But I reject that.  This crime was committed

15   while he was on probation and the crime consisted of the

16   transport, in 1993, while he was clearly on probation.

17         I don't think that one is well grounded either.

18   Where within the guideline range should I sentence him?

19         MR. SCHECHTER:  As low as possible, your Honor.

20         THE COURT:  The guideline range is 37 to 46

21   months?

22         MS. CHOO:  Yes, your Honor.

23         THE COURT:  Where within that range should I

24   sentence him?

25         MR. SCHECHTER:  If we assume that you should

1    sentence him within that range, you should sentence him to

2    the lowest possible number, 37 months.  2 other items --

3          THE COURT:  What about the fine?

4          MR. SCHECHTER:  Your Honor, I would be perfectly

5    willing, if you like, to put the defendant on the stand on

6    this issue --

7          THE COURT:  Well, you have to.

8          MR. SCHECHTER:  Any fine will be, aside from any

9    residual equity, which I believe to be minimal in his home

10   and there is another piece of estate disclosed too, I don't

11   believe the defendant has any assets whatever.

12         THE COURT:  The question is whether I have a

13   factual record on which I can find he lacks the ability to

14   pay a fine.  It works the other way.  Unless I can find that

15   he has an inability to pay a fine, then I have to impose it

16   under the title.

17         MR. SCHECHTER:  That may very well be.

18         THE COURT:  How can I make a finding of financial

19   inability to pay if I accept the trial record and if I

20   accept that he still has in his possession substantial

21   property of Mr. Kalantari?

22         MR. SCHECHTER:  I guess your Honor has to impose

23   a fine.

24         THE COURT:  I don't know that I can make a

25   finding of financial inability to pay.  I got his financial

1   statement which would suggest that he doesn't have any

2   equity in his house, et cetera.  I have no financial

3   information that was given to the Probation Department.  But

4   I do have evidence that he took 5 or 10 million dollars --

5            MR. SCHECHTER:  There was information given to

6   the Probation Department.

7            THE COURT:  I thought they said he declined to

8   make a statement about his financial situation.

9            MR. SCHECHTER:  No, he wasn't interviewed, your

10  Honor.

11           THE COURT:  The statement that I got here, was

12  that given to --

13           MR. SCHECHTER:  It was given to Pretrial

14  Services.

15           THE COURT:  I don't have anything other than

16  that.

17           MR. SCHECHTER:  I understand.  That is accurate.

18           THE COURT:  That would suggest that -- even that

19  doesn't suggest that he doesn't have any money.  Let me just

20  look at that again.

21           (Pause)

22           MR. SCHECHTER:  Your Honor, I should indicate to

23  the court that his wife may have one asset, depending on, as

24  your Honor remembers from the trial, the outcome of pending

25  civil litigation concerning the jewelry which is worth

1   somewhere, depending on who you believe, upwards of 200 and

2   some-odd thousand dollars.  Mr. Ogle had possession of that

3   jewelry.

4            THE COURT:  I have a financial statement that

5   shows him with a negative -- with liabilities over assets of

6   $170,000.  But on the other hand I have him with retained

7   counsel, I have him according, to the testimony I heard at

8   trial, with a $250,000 loan which apparently was given to

9   him by Mr. Ogle, if you believe Mr. Ogle's testimony.  He

10  has a retained lawyer, so I don't know that I can make a

11  finding without more detailed information than this

12  secretary.

13           MR. SCHECHTER:  Very simple, your Honor.  The

14  money that was lent by Mr. Ogle was the only cash or money

15  that the defendant had.  The collateral when the painting

16  was seized, was substituted for his wife's jewelry, so she

17  was the owner of that money --

18           THE COURT:  Let's put this case back to where it

19  was.  Before the trial even started --

20           MR. SCHECHTER:  That is where the retainer came

21  from, and I haven't been paid since.

22           THE COURT:  Before the trial started, now that

23  it's coming back to me, he was trying to get me to have the

24  CJA pay for his trips to Europe to get certain witnesses, et

25  cetera, and I offered you a full hearing at that point on

33

1    the state of his financial situation, being that you were a

2    retained lawyer and the suggestion that a rather large

3    retainer had been paid to you.  That hearing was declined,

4    was I recall.

5            MR. SCHECHTER:  Yes, your Honor, I declined in my

6    judgment as an attorney to put him on the witness stand at

7    that point for any purpose, when I -- I thought there were

8    important tactical reasons unrelated to his income for not

9    putting him on the witness stand at that time.

10           THE COURT:  But none of that has even been

11   explained to now.  Before I can impose no fine, I have to

12   make a finding that he is finally unable to pay.  I have a

13   financial statement which is very generic, which is an

14   excess of liability over assets, but I can't ignore the fact

15   that the government says to me, and I do believe it, he has

16   appropriated anywhere from 5 to 10 million dollars of

17   Mr. Kalantari's properties.  The painting has been

18   repossessed as well as a few rugs, but there is a lot out

19   there.  I don't think I can make that finding.

20           MR. SCHECHTER:  If your Honor remembers Mr.

21   Kalantari's testimony, it's that he recovered all of the

22   rugs plus that he compensated himself by seizing rugs which

23   he admitted belonged to Mr. Khodadad.

24           THE COURT:  I don't think he had gotten it all

25   back.

34

1            MR. SCHECHTER:  I think it was all but 13

2    carpets.

3            THE COURT:  13 carpets is a considerable amount

4    of money.

5            MR. SCHECHTER:  Again, this trial took place 6

6    month ago but weren't those 13 carpets the ones that were

7    stolen by some intermediary that Mr. Kalantari chose to use?

8            THE COURT:  I will hear from the government.

9            MS. CHOO:  The trial testimony was that Mr.

10   Kalantari recovered 8 rugs in the Paris proceeding.

11   And 11 rugs in Germany, and nothing else.

12           THE COURT:  There were 38 rugs taken.

13           MS. CHOO:  Altogether there were 298 rugs.

14           THE COURT:  I don't think I can make a finding of

15   financial incapacity.

16           MR. SCHECHTER:  I understand.  Since the subject

17   of my retainer has comes up many times, I'd like to say that

18   the specific source of all the funds that I have been paid

19   and I know that of my own knowledge, was monies that were

20   borrowed from Mr. Ogle pursuant to the collateralization of

21   the jewelry of his wife.

22           THE COURT:  In any event, those assets, whether

23   that is true or not, I don't think on this record I can find

24   that he is financially unable to pay.  There are certain

25   indications, he is coming from New York to California, he is

P4c8mkoda

35

1  supporting his family somehow --

2        MR. SCHECHTER:  He is not supporting his family.

3        THE COURT:  Is he on welfare?

4        MR. SCHECHTER:  No, his wife is on welfare.

5        THE COURT:  I don't think on this record I can

6  find that he lacks financial ability.  Mr. Khodadad, is

7  there anything you want to say before I impose sentence?

8        THE DEFENDANT:  Your Honor it concerns my

9  property, I own nothing now.  I have a house which indicates

10 for $175,000, but the same house across the street went for

11 $110,000.  Since the year I leave Iran I have been under

12 stress, I was convicted in Paris in 1985, and Mr. Kalantari

13 told me he will take care of me, and he came here and that

14 is what he did.

15        I have no contact with my relatives any more.

16 None of my relatives come to me because of my embarrassment.

17 I feel so much embarrassed in front of my own children, my

18 wife, my children, my brothers.

19        THE COURT:  All right.

20        MR. SCHECHTER:  Your Honor, I have one more

21 remark -- 2 other things to say to the court.  One is this:

22 I was reminded by my assistant that the psychologist asked

23 me to point out to the court that there are other patterns

24 of destructive behavior in Mr. Khodadad's personality, that

25 he would torture himself physically, burn himself with

P4c8mkoda

36

1  cigarettes, attack himself with pincers, and things of that

2  kind.  This is what supported some of the other views that

3  she had expressed.

4        THE COURT:  I don't think that will change my

5  decision.

6        MR. SCHECHTER:  I understand.  I just didn't want

7  to leave a stone unturned.  The last thing I want to say is

8  please take into consideration that aside from his visits

9  here, visits with lawyers for medical appointments, for

10 which he has had permission, the defendant has spent 2 years

11 in house arrest, 24 hours a day.

12        THE COURT:  House arrest?

13        MR. SCHECHTER:  Home detention.

14        THE COURT:  No, that was a bail condition.

15        MR. SCHECHTER:  I'm not using these terms as

16 words of art, and again your Honor has to forgive me, where

17 the phrase house arrest is used as a condition of bail.

18        THE COURT:  That is based so he wouldn't be in

19 jail.  If he had been in jail he would have gotten credit

20 for time served.  You can't have your cake and eat it too.

21        MR. SCHECHTER:  I would say it's a small point.

22        THE COURT:  If he had been in jail waiting trial

23 I obviously would have given him credit for that time.  But

24 not having been in prison, I can't give him credit.

25        MR. SCHECHTER:  I don't ask your Honor to give

P4c8mkoda

37

1  him credit, I ask your Honor to take it into consideration,

2  both in imposing the low end of the guidelines because his

3  freedom has been restricted, albeit he requested the

4  situation, freedom has been restricted for a period of over

5  2 years, and I would also urge it as one of the combination

6  of factors which would have justified a downward departure

7  because it's a situation not adequately addressed by the

8  guidelines or considered by the Guidelines Commission that

9  some may have had their freedom interfered with in a

10  substantial way for an lengthy period of time.

11          THE COURT:  That is certainly contemplated.  The

12  guidelines certainly contemplate bail.  He certainly got

13  bail conditions.  The Bail Reform Act was put on the books

14  before the guidelines.

15          MR. SCHECHTER:  I understand.  I ask your Honor

16  to consider that factor for whatever value it may have in

17  assisting the court.  Would the court be so kind, if this is

18  indicated, the defendant to go into custody to permit him to

19  self-surrender when the Department of Corrections selects an

20  appropriate facility?

21          THE COURT:  I have to hear from the government

22  after I impose sentence.

23          MR. SCHECHTER:  I understand from my colleagues

24  from suggestions that the government has no position on this

25  matter.

P4c8mkoda

38

1          THE COURT:  The Probation Department doesn't

2  think he is a good candidate for voluntary surrender.

3          MR. SCHECHTER:  Your Honor knows and has

4  commented upon the fact that the defendant has appeared

5  every time this case is on, including today, flown across

6  the country to do so, made all the appearances in San

7  Francisco.  I personally checked with the probation officer,

8  in 2 and a half years he has never missed a day in phoning

9  in.

10          THE COURT:  With respect to the jail sentence I

11  am going to impose, the guideline range is 37 to 46 months.

12  The probation officer recommends 46 months.  I'm not sure

13  that the top end of the guideline range is required.  I am

14  gong to impose a sentence of 41 months.

15          With respect to probation, that is not relevant,

16  because I have imposed incarceration.  Supervised release, I

17  will impose a period of 3 years supervised release.  On the

18  fine, I don't think on this record, given his prior

19  resources when he was in Iran, with respect to the

20  unrecovered property, and where he is living, I therefore am

21  faced, and make the finding that he does have the financial

22  wherewithal, therefore I will impose a fine.  The mandatory

23  minimum fine is $7,500.  The probation office recommends

24  $75,000.  Given the jail sentence imposed, I think a $10,000

25  fine is reasonable.  Restitution is not relevant.  A special

P4c8mkoda
39

1    assessment of $100 is imposed.

2             I will hear from the government on the issue of

3    voluntary surrender.

4             MS. CHOO:  Your Honor, the government will take

5    no position.

6             THE COURT:  You do not regard him as a bad bail

7    risk?

8             MS. CHOO:  We have viewed him as a risk of flight

9    and aside from --

10            THE COURT:  Are you moving for his remand?

11            MS. CHOO:  Your Honor, the government will agree

12   to voluntary surrender if it is done within a reasonable

13   period of time.

14            THE COURT:  You are a not moving for a remand?

15            MS. CHOO:  The government will not make that

16   motion.

17            THE COURT:  If you are moving to remand, then I

18   might have to remand him unless I found there was some

19   appellate issues -- but you are not.  Fine.  If you are not

20   moving for are remand, I will give him a period to surrender

21   voluntarily.  When and how long will it take him?

22            MR. SCHECHTER:  May I talk to the U. S. Attorney

23   for a moment?

24            THE COURT:  Yes.

25            (Pause)

---

P4c8mkoda
40

1             MR. SCHECHTER:  Your Honor, a stipulated date of

2    January 2, with the understanding between the 2 of us that

3    Ms. Choo will see if they have a facility available for him

4    by that time and she may decide to --

5             THE COURT:  You want him to surrender in

6    California?  It makes more sense.

7             MR. SCHECHTER:  Yes, your Honor.

8             THE COURT:  With respect to the supervised

9    release I will impose a special condition of the supervised

10   release that he not possess a firearm or other dangerous

11   weapon, that he maintain regular payments towards the fine

12   during the period of supervised release, if the fine is not

13   paid before then; and that he cooperate with the Immigration

14   and Naturalization Service in connection with any

15   deportation proceedings which are being brought against him

16   or may be brought against him.

17            MS. CHOO:  Your Honor, the defendant has a right

18   to appeal and I assume he's read the presentence report.

19            MR. SCHECHTER:  Yes, sir, I have read it to him.

20            THE COURT:  Was it translated for him?

21            MR. SCHECHTER:  It was translated for him, not by

22   a court interpreter but it was translated for him.

23            THE COURT:  As long as he had an opportunity to

24   read it.  Does he understand what's in it?

25            MR. SCHECHTER:  In my opinion he understands it.

P4c8mkoda                                                   41

1      THE COURT:  I will make the finding on the record

2  that he had an opportunity to review it, and from the length

3  of the proceedings, he understands what's in there.

4      MS. CHOO:  Your Honor, may we release the

5  painting?  Prior to this time, your Honor had directed us

6  not to release it at the time the verdict came in.

7      THE COURT:  I sentenced him, but if there is an

8  appeal you may need it for another trial.  It's up to you.

9  Do I have the authority to keep it?

10     MR. SCHECHTER:  As long as that issue has come

11  up, I'd like to say to the court, the court made a

12  suggestion to me at sometime in the past that I attempt to

13  resolve that issue prior to today.  I'd like the court to

14  know that I have attempted to do so, but I have not received

15  any return telephone call from any of Mr. Kalantari's

16  attorneys.  If I do receive such a communication there may

17  be an ability to deal with that issue.  I don't know that

18  the court would have any continuing jurisdiction to consider

19  that.

20     THE COURT:  I don't think I do because it's

21  evidence, yes, and it's up to the government to decide

22  whether or not they want to turn the evidence back; and they

23  may need it in case of a reversal here.

24     You have to be aware that there are conflicting

25  claims to the same painting, you have to admit he doesn't

P4c8mkoda                                                   42

1  have a strong case now that he's been convicted beyond a

2  reasonable doubt, in any state proceedings that you may

3  have.  So it may be safe to give it back to Mr. Kalantari,

4  although up may not want to.

5      MR. SCHECHTER:  I have some reason to believe

6  that there may be additional evidence which will form the

7  corpus of a motion based on newly discovered evidence which

8  has not matured at this time.  There are certainly things

9  which may or may not be transpiring between the Federal

10  Bureau of Investigation and Mr. Ogle, who testified here,

11  which may have an impact on the continuing validity of

12  Mr. Khodadad's conviction, I don't know.

13     THE COURT:  The problem is that you have to

14  demonstrate that the testimony would be different.  And Mr.

15  Ogle was substantially impeached at trial.  It would have to

16  be overpowering evidence tending to affirmatively establish

17  he's innocent.  Mr. Ogle was impeached considerably.

18     MR. SCHECHTER:  I just want don't want to sandbag

19  anybody by having an early release.  I just want to have

20  disclosed everything to the United States Attorney and the

21  court.

22     THE COURT:  It's up to them.  I don't think it's

23  my jurisdiction to tell you whether to release it or not.

24  Did I tell you to hold on to it?

25     MS. CHOO:  Yes, your Honor.

43

1      THE COURT:  I sentenced him.  My jurisdiction is

2  over.  It's your choice from there.  I would think you would

3  be well advised to wait for the appeal to be resolved.

4      MR. SCHECHTER:  Your Honor indicated to me the

5  last time we saw each other that it might be a factor for

6  the court to consider in sentencing if the situation

7  regarding the painting was resolved by today.  I have

8  attempted to do that but I can't get Mr. Kalantari's

9  attorney to call me back.  Either he no longer represents

10  him or he's been instructed not to return my phone calls, I

11  don't know.  If I did receive such a telephone call I might

12  be able to release Mr. Khodadad's interest in the painting.

13      THE COURT:  But from the government's point of

14  view the only issue that has been raised is whether or not

15  they -- it's still evidence as far as I am concerned and I

16  don't think it would be wise, if you want my informal

17  advice, to release the evidence until the appeal is disposed

18  of.  And at that point in time you can commence an

19  interpleader proceeding and let him give you whatever new

20  evidence he has.  But in the absence of new evidence -- the

21  motion for new trial has to be made promptly.  You can't

22  make it 5 years from now.

23      MR. SCHECHTER:  I know.  It has to be made within

24  2 years.  There are events which I don't want to make any

25  representations about, but which may or may not take shape

44

1  in the next couple of days.

2      THE COURT:  Once the appeal is resolved you may

3  be in a position of having to chase Mr. Kalantari for the

4  painting.  Then the shoe will be on the other foot.

5      MR. SCHECHTER:  At this point there is even no

6  notice of appeal filed.

7      THE COURT:  No, but I expect that to take place

8  within 10 days.

9      MR. SCHECHTER:  I will advise the defendant of

10  all of his rights.

11      THE COURT:  If not, you won't have one.

12      MR. SCHECHTER:  Does the court feel it has

13  continuing jurisdiction?

14      THE COURT:  My jurisdiction ends --

15      MR. SCHECHTER:  To modify --

16      THE COURT:  No, my jurisdiction ends once a

17  notice of appeal is filed.  I have jurisdiction to entertain

18  a 2255, I will not entertain 2255 on any ground that could

19  be raised on direct appeal.  That would be silly.  Raise

20  them on direct appeal.  To the extent they are part of the

21  trial record.  If they are outside of the trial record, I

22  have jurisdiction.

23      I always have jurisdiction to entertain a motion

24  for a trial based on evidence outside the record.

25      MR. SCHECHTER:  I'm not talking about new trial,

P4c8mkoda
45

1    I am talking about modification of sentence.

2              THE COURT:  I have no jurisdiction to modify the

3    sentence once imposed unless the sentence is illegal.

4              MR. SCHECHTER:  Or unless the government made a

5    ruled 35 motion.

6              THE COURT:  That would have to be made on papers.

7              ---oOo---

8

9

10

11

12

13

14        '

15

16

17

18

19

20

21

22

23

24

25